IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 13 CR 515 |
| | ) | |
| v. | ) | |
| | ) | JUDGE REBECCA R. PALLMEYER |
| DMITRY FIRTASH, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**DMITRY FIRTASH'S MEMORANDUM OF LAW IN SUPPORT
OF HIS MOTION TO DISMISS THE INDICTMENT**

# TABLE OF CONTENTS

**Page**

FACTUAL BACKGROUND ................................................................................ 3

I.  Dismissal Is Warranted Because Venue In The Northern District of Illinois Is Improper. .......................................................................................... 4

II.  The RICO, Money Laundering, And Travel Act Counts (Counts One, Two, Three, And Four) Fail Because These Statutes Do Not Apply Extraterritorially And Jurisdiction Is Not Proper In The United States ................. 8

    A.  The RICO Count Fails Because There Is No Allegation Of A Significant Effect On United States Commerce And Neither The Money Laundering Nor The Travel Act Statutes Apply Extraterritorially Here. .............................................................................. 9

        1.  This Court Should Dismiss The RICO Count Because The Charged RICO Enterprise Does Not Affect United States Commerce In A Significant Way .................................................. 10

        2.  The Predicate Money Laundering Statute Does Not Apply Extraterritorially Or Domestically. ............................................... 11

        3.  The Predicate Travel Act Statute Does Not Apply Extraterritorially Or Domestically. ............................................... 14

            a.  The Travel Act Is Not Extraterritorial ............................. 14

            b.  The Travel Act Does Not Have Domestic Application ....................................................................... 15

                i.  Interstate Travel Is Irrelevant To Whether The Travel Act Can Apply To Foreign Conduct. .............................................................. 15

                ii.  The Two Allegations Of Foreign Travel In The Indictment Are Incidental And Do Not Support Travel Act Jurisdiction. .......................... 16

                iii.  U.S. Email And/Or Cell Phone Use Unconnected And/Or Incidental With Illegal Activity Does Not Support Travel Act Jurisdiction. .......................................................... 18

    B.  There Is No Jurisdiction For The Money Laundering (Count Two) ........ 19

C.      There Is No Jurisdiction For The Travel Act Counts (Counts Three And Four) ................................................................................. 19

III.    The FCPA Charge Fails For Lack Of Jurisdiction In The United States .............. 19

IV.     This Court Should Dismiss The Indictment Because Prosecuting Firtash In The United States Violates His Due Process Rights ............................................. 23

A.      The Indictment Violates Firtash's Due Process Rights As A Matter Of International Law ................................................................................. 25

1.      The Allegations Against Firtash Have No Substantial Effect On The United States And Do Not Impact The Security Of The United States Or Any Other Interest. ................. 28

2.      Prosecution Of Firtash In The United States Is Unreasonable ................................................................................. 33

B.      The Indictment Violates Firtash's Due Process Rights Because There Is No Substantial Nexus Between The Conduct Charged In The Indictment And The United States. ................................................... 35

CONCLUSION ................................................................................................................. 35

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abelesz v. OTP Bank*,
    692 F.3d 638 (7th Cir. 2012) ............................................................32, 33

*Andrews v. United States*,
    817 F.2d 1277 (7th Cir. 1987) ..................................................................7

*Benz v. Compania Naviera Hidalgo, S.A.*,
    353 U.S. 138 (1957).................................................................................2, 9

*Benz v. Naviera Hidalgao, S.A.*,
    33 U.S. 138 (1957)...................................................................................3

*Burger King v. Rudzewicz*,
    471 U.S. 462 (1985).................................................................................7

*Cedeno v. Intech Grp., Inc.*,
    733 F. Supp. 2d 471 (S.D.N.Y. 2010)......................................................13

*EEOC v. Arabian American Oil Co.*,
    499 U.S. 244 (1991).................................................................................2, 3, 9

*Europe & Overseas Commodity Traders, SA v. Banque Paribas London*,
    147 F.3d 118 (2d Cir. 1988).....................................................................34

*European Community v. RJR Nabisco, Inc.*,
    764 F.3d 129 (2d Cir. 2014).....................................................................14

*F. Hoffmann-La-Roche Ltd. v. Empagran*,
    542 U.S. 155 (2004).................................................................................2, 26

*Foley Bros., Inc. v. Filardo*,
    336 U.S. 281 (1949).................................................................................9

*Gebardi v. United States*,
    287 U.S. 112 (1932).................................................................................21, 22

*Giaccio v. Pennsylvania*,
    382 U.S. 399 (1966).................................................................................23

*In re Hijazi*,
    589 F.3d 401 (7th Cir. 2009) .......................................................... *passim*

*Int'l Shoe Co. v. Washington,*
    326 U.S. 310 (1945).................................................................................24

*J. McIntyre Mach., Ltd. v. Nicastro,*
    564 U.S. 873 (2011).................................................................................24

*Kiobel v. Royal Dutch Petroleum Co.,*
    133 S.Ct. 1659 (2013)........................................................................2, 9, 23

*Matter of Warrant to Search Certain E-Mail Account Controlled and Maintained
    by Microsoft Corp.,*
    829 F.3d 197 (2d Cir. 2016)........................................................................2

*Microsoft Corp. v. AT&T Corp.,*
    550 U.S. 437 (2007)........................................................................2, 8, 28

*Morrison v. Nat'l Australia Bank, Ltd.*
    561 U.S. 247 (2010)...............................................................9, 13, 14, 23

*Rewis v. United States,*
    401 U.S. 808 (1971).................................................................................16

*RJR Nabisco, Inc. v. European Community,*
    136 S. Ct. 2090 (2016)..................................................................... *passim*

*Sale v. Haitian Ctrs. Council, Inc.,*
    509 U.S. 155 (1993).................................................................................3, 9

*Small v. United States,*
    544 U.S. 385 (2005).................................................................................3

*Smith v. United States,*
    507 U.S. 197 (1993).................................................................................9

*Textor v. Bd. of Regents of N. Ill. Univ.,*
    711 F.2d 1387 (7th Cir. 1983) .................................................................4

*Travis v. United States,*
    364 U.S. 631 (1961).................................................................................5

*United States v. Al Kassar,*
    660 F.3d 108 (2d Cir. 2014).....................................................................30

*United States v. Ali,*
    718 F.3d 929 (D.C. Cir. 2013)..................................................................23

*United States v. Altobella,*
    442 F.2d 310 (7th Cir. 1971) ..............................................................15, 17

iv

*United States v. Approx. $25,829,681.80 in Funds*,
No. 98 Civ. 2682, 1999 WL 1080370 (S.D.N.Y. Nov. 30, 1999) ..........................................12

*United States v. Bezmalinovic*,
962 F. Supp. 435 (2d Cir. 1997) ...............................................................................................8

*United States v. Bodmer*,
342 F. Supp. 2d 176 (S.D.N.Y 2004)........................................................................................21

*United States v. Botticello*,
422 F.2d 83 (2d. Cir. 1970)........................................................................................................17

*United States v. Brehm*,
691 F.3d 547 (4th Cir. 2012) ....................................................................................................30

*United States v. Briggs*,
700 F.2d 408 (7th Cir. 1983) ....................................................................................................15

*United States v. Budovsky*,
No. 13cr368, 2015 WL 5602853 (S.D.N.Y. Sept. 23, 2015)....................................................31

*United States v. Cabrales*,
524 U.S. 1 (1998)........................................................................................................................5

*United States v. Cardales*,
168 F.3d 548 (1st Cir. 1999) ....................................................................................................24

*United States v Castle*,
925 F.2d 831 (5th Cir. 1991) .......................................................................................21, 22, 23

*United States v. Columbo-Colella*,
604 F.2d 356 (5th Cir. 1979) .........................................................................................27, 32, 33

*United States v. Davis*,
905 F.2d 245 (9th Cir. 1990) .............................................................................................24, 30

*United States v. Galvis-Pena*,
No. 1:09-cr-25, 2012 WL 425240 (N.D. Ga. Feb. 9, 2012) ....................................................12

*United States v. Garcia*,
533 F. App'x 967 (11th Cir. 2013) ...........................................................................................12

*United States v. Geibel*,
369 F.3d 682 (2d Cir. 2004).......................................................................................................6

*United States v. Hayes*,
No. 12 MJ 3229, 2015 WL 1740830 (S.D.N.Y. Mar. 20. 2015)..............................................24

*United States v. Hijazi,*
   845 F. Supp. 2d 874 (C.D. Ill. 2011) ..........................................................26, 30

*United States v. Hoskins,*
   123 F. Supp. 3d 316 (D. Conn. 2015) ..............................................20, 21, 22, 23

*United States v. Isaacs,*
   493 F.2d 1124 (7th Cir. 1974) ........................................................................17

*United States v. Jang,*
   No. 1:07-cr-52-DFH-KPF, 2007 WL 4616927 (S.D. Ind. Dec. 27, 2007) ..........................7, 8

*United States v. Javino,*
   960 F.2d 1137 (2d Cir. 1992) ........................................................................34

*United States v. Jefferson,*
   594 F. Supp. 2d 655 (E.D. Va. 2009) ..............................................................19

*United States v. Johnson,*
   323 U.S. 273 (1944) ..............................................................................4, 5, 7

*United States v. Kashamu,*
   15 F. Supp. 3d 854 (N.D. Ill. 2014) ................................................................26

*United States v. Lloyds TBS Bank PLC,*
   639 F. Supp. 2d 314 (S.D.N.Y. 2009) ..............................................................34

*United States v. Martinez-Hidalgo,*
   993 F.2d 1052 (3d Cir. 1993) ........................................................................25

*United States v. McCormick,*
   442 F.2d 316 (7th Cir. 1961) ........................................................................17

*United States v. McNeal,*
   77 F.3d 938 (7th Cir. 1996) ..........................................................................17

*United States v. McPhee,*
   336 F.3d 1269 (11th Cir. 2003) ......................................................................11

*United States v. Mostafa,*
   965 F. Supp. 2d 451 (S.D.N.Y. 2013) ..............................................................30

*United States v. Muhammad,*
   502 F.3d 646 (7th Cir. 2007) ..........................................................................6

*United States v. Muskovsky,*
   863 F.3d 1319 (7th Cir. 1988) ........................................................................17

*United States v. Nippon Paper Indus. Co.*,
    109 F.3d 1 (1st Cir. 1997) ................................................................26

*United States v. Noriega*,
    683 F. Supp. 1373 (S.D. Fl. 1988) .......................................................24

*United States v. Perlaza*,
    439 F.3d 1149 (9th Cir. 2006) ......................................................31, 33

*United States v. Peterson*,
    812 F.2d 486 (9th Cir. 1987) ...........................................................30

*United States v. Royer*,
    549 F.3d 886 (2d Cir. 2008) ..............................................................6

*United States v. Sidorenko*,
    102 F. Supp. 3d 1124 (N.D. Cal. 2015) ......................................29, 32, 33

*United States v. Stein*,
    Crim. A. No. 93-375, 1994 WL 285020 (E.D. La. June 23, 1994) ...............12, 13

*United States v. Svoboda*,
    347 F.3d 471 (2d Cir. 2003) ..............................................................8

*United States v. Vanichromanee*,
    742 F.2d 340 (7th Cir. 1984) ...........................................................15

*United States v. Yousef*,
    327 F.3d 56 (2d Cir. 2003) ..........................................................24, 30

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980) ......................................................................7

**Statutes**

15 U.S.C. § 78dd-1 *et seq.* ..............................................................19

15 U.S.C. §§ 78dd-2(a) ..................................................................19

15 U.S.C. § 78dd-2(g)(2)(A) .............................................................19

15 U.S.C. § 78dd-3(a) ................................................................19, 20

15 U.S.C. § 78dd-3(f)(1) ..................................................................1

18 U.S.C. § 1952 ......................................................................14, 15

18 U.S.C. § 1952(a) ......................................................................14

18 U.S.C. § 1956 ...................................................................................................11

18 U.S.C. § 1956(f)(1) ....................................................................................11, 12

18 U.S.C. § 1962(d) ........................................................................................9, 10

**Other Authorities**

Fed. R. Crim. P. 12(b) .............................................................................................1

Fed. R. Crim. P. 18 .................................................................................................5

H.R. Conf. Rep. No. 831, 95th Cong., 1st Sess. 14, *reprinted in* 1977 U.S. Code
    Cong. & Admin News 4121 ............................................................................22

Restatement (Third) of Foreign Relations § 402 ............................................26, 27

Restatement (Third) of Foreign Relations § 403 ............................................26, 27

Restatement (Third) of Foreign Relations § 403(1) ..............................................27

Restatement (Third) of Foreign Relations § 403(2) ........................................26, 27

Restatement (Third) of Foreign Relations § 403(2)(a) ..........................................26

S. Rep. 99-433 .......................................................................................................13

U.S. CONST. amend. V ...........................................................................................24

U.S. CONST. amend. VI ...........................................................................................5

U.S. CONST. art. III, § 2, cl. 3 ................................................................................5

## DMITRY FIRTASH'S MEMORANDUM OF LAW IN SUPPORT
## OF HIS MOTION TO DISMISS THE INDICTMENT

Defendant Dmitry Firtash ("Firtash") moves to dismiss the Indictment pursuant to Federal Rule of Criminal Procedure 12(b) because the Indictment fails to set forth facts that satisfy the legal requirements of venue in the Northern District of Illinois or jurisdiction in the United States. Firtash is a 51-year-old Ukrainian citizen. He is not now, and has never been, a citizen of the United States of America.[1] Firtash has never applied for the visa required to enter the United States and has never set foot in the country. The Indictment fails to allege a single illicit act by Firtash that either occurred in the United States or affected the United States.

The charges in the Indictment are based on allegations that bribes were paid to Indian officials in connection with a "mining"[2] project that was planned to take place entirely within India by foreign companies with no connection to the United States. United States law and international legal principles establish no basis for the prosecution of this case in the United States.

This Court should dismiss the indictment for three reasons. *First*, there is no venue in the Northern District of Illinois and a trial in this district would violate the U.S. Constitution. *Second*, none of the laws that Firtash is charged with violating properly apply beyond the territory of the United States nor are they domestic as alleged. *Third*, the prosecution is a

---

[1] The Indictment recognizes this fact in defining Firtash along with codefendants Andras Knopp, Suren Gevorgyan, Periyasamy Sunderalingham, and Firtash companies Group DF Limited, Ostchem Holding, AG, GEMM, and Bothli Trade AG as "persons" as the term is used in the Foreign Corrupt Practices Act ("FCPA") 15 U.S.C. § 78dd-3(f)(1). (*See* Indictment at Count 5, ¶ 2(b).) Pursuant to FCPA § 78dd-3(f)(1), a "person" is "any natural person *other than* a national of the United States." 15 U.S.C. § 78dd-3(f)(1) (emphasis added).

[2] The Indictment incorrectly refers to the project as a "mining" project when mining was but the first technological phase of an enormous vertically integrated mineral extraction, transport, and refinement project that was planned in India and was less than 10% of the planned investment.

violation of Firtash's due process rights because the United States has no legitimate interest in prosecuting the charged conduct.

The Supreme Court, the Seventh Circuit, and other circuits have recognized that questions involving the United States' prosecution of a foreign citizen raise important and delicate issues. In *F. Hoffmann-La-Roche Ltd. v. Empagran*, 542 U.S. 155, 164-165 (2004), the Supreme Court stated:

> [T]his Court ordinarily construes ambiguous statutes to avoid unreasonable interference with the sovereign authority of other nations (citations omitted). This rule of construction reflects principles of customary international law – law that [we must assume] Congress ordinarily seeks to follow. (citations omitted) This rule of statutory construction cautions courts to assume that legislators take account of the legitimate sovereign interests of other nations when they write American laws. It thereby helps the potential conflicting laws of different nations work together in harmony – a harmony particularly needed in today's highly interdependent commercial world.

Similarly, in *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437 (2007), the Supreme Court stated that the presumption against extraterritorial application of United States law reflected the "presumption that United States law governs domestically but does not rule the world." *Id*. at 454. Likewise, in *EEOC v. Arabian American Oil Co.*, 499 U.S. 244 (1991), the Supreme Court held that the presumption against extraterritoriality "serves to protect against unintended clashes between our laws and those of other nations which could result in international discord." *See also Kiobel v. Royal Dutch Petroleum Co.*, 133 S.Ct. 1659, 1664 (2013) (citing *Benz v. Compania Naviera Hidalgo, S.A.*, 353 U.S. 138, 147 (1957) ("The presumption against extraterritorial application helps ensure that the Judiciary does not erroneously adopt an interpretation of U.S. law that carries foreign policy consequences not clearly intended by the political branches.")); *Matter of Warrant to Search Certain E-Mail Account Controlled and Maintained by Microsoft Corp*., 829 F.3d 197 (2d Cir. 2016) (applying presumption against extraterritorial application of U.S. law to hold that the Stored Communication Act ("SCA") does

2

not authorize a U.S. Court to enforce a SCA warrant against a U.S. service provider for customer communications located outside the U.S.).

In *In re Hijazi*, 589 F.3d 401 (7th Cir. 2009), the Seventh Circuit took note of these concerns. The Court in *Hijazi* observed that many other Supreme Court decisions stood for the (rebuttable) presumption against United States laws with extraterritorial effect. *Hijazi* at 409, *citing Small v. United States*, 544 U.S. 385 (2005); *Sale v. Haitian Ctrs. Council, Inc.,* 509 U.S. 155 (1993); *EEOC v. Arabian Am. Oil Co*., 499 U.S. 244 (1991); *Benz v. Naviera Hidalgao, S.A.*, 33 U.S. 138 (1957). The concern with the extraterritorial application of United States laws, and its potential to impinge upon the sovereign rights of other nations, is front and center here.

The allegations in the Indictment fail because they lack the required nexus, either geographically or from the perspective of a cognizable United States interest, to the charged conduct. This Court should dismiss the Indictment.

## FACTUAL BACKGROUND

The Indictment alleges that Firtash participated in an international racketeering conspiracy involving some unidentified person paying bribes to state and central government officials in India. (Indictment at ¶ 5.) The Indictment asserts that Firtash directed activities of an illegal RICO enterprise in that he allegedly: (1) met with Indian officials concerning the India project and its progress; (2) authorized payment of $18.5 million in bribes to Indian officials; (3) directed subordinates to create documentation to make it appear that bribe money was transferred for a legitimate commercial purpose; and (4) appointed subordinates, including codefendant Andras Knopp, to oversee efforts to obtain licenses through bribery. (Indictment at ¶ 7.) The Indictment does not claim, however, that Firtash ever entered the United States, much less engaged in a single illegal act in the United States, or any act in furtherance of the alleged bribery scheme in the United States.

3

During the time period of 2006-2013, as charged in the Indictment (Indictment at ¶ 13), Firtash lived in the Ukraine and worked internationally. The Indictment cannot and does not allege that Firtash made or received any telephone calls or sent or received any emails regarding the allegations in the Indictment in the United States.

To attempt to connect Firtash to the United States, the Indictment is left to state that Firtash's alleged coconspirators: (1) transferred funds through United States correspondent banks; (2) traveled within the United States; (3) used the internet and email accounts hosted on servers in the United States; and (4) used a cellular phone located in the United States and operated on a United States network: (*Id.* at ¶¶ 16(b), (f), (g), (h).) The Indictment fails to allege that any of this activity with even a limited connection to the United States was actually part of the bribery conspiracy charged in the Indictment. Nor does the Indictment allege that a significant act in advancement of the alleged conspiracy occurred in the United States. *See Textor v. Bd. of Regents of N. Ill. Univ.*, 711 F.2d 1387, 1392 (7th Cir. 1983) (conspiracy theory of jurisdiction in personal jurisdiction context requires as showing of a "substantial act in furtherance of the conspiracy [be] performed in the forum state"). In addition, the Indictment lacks a single allegation of any illicit act performed in the Northern District of Illinois. Put simply, the Indictment does not provide a sufficient basis on which to assert venue over Firtash in the Northern District of Illinois. Nor does the Indictment assert jurisdiction over Firtash in the courts of the United States.

## I. Dismissal Is Warranted Because Venue In The Northern District of Illinois Is Improper.

In criminal cases, questions of venue take on a constitutional dimension. *United States v. Johnson*, 323 U.S. 273 (1944). Because venue is improper here, this Court should dismiss.

In *United States v. Cabrales*, 524 U.S. 1 (1998), the United States Supreme Court held: "[t]he Constitution twice safeguards the defendant's venue right." *Id*. at 6. The Court cited to Article III, Section 2, cl. 3 of the United States Constitution, which provides that "[t]rial of all crimes…shall be held in the State where the said crimes shall have been committed." *Id*. In addition, the Court cited the Sixth Amendment, which provides criminal defendants with the right "to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed." *Id*.

Rule 18 of the Federal Rules of Criminal Procedure implements the above-noted rights, providing that "the government must prosecute an offense in a district where the offense was committed." Rule 18 further provides that "[t]he court must set the place of trial within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice."

The Supreme Court has stated that venue provisions are intended as safeguards to protect defendants from bias, disadvantage, and inconvenience in the adjudication of charges against them. *Travis v. United States*, 364 U.S. 631, 634 (1961). The Court has placed particular significance on proper venue in criminal cases:

> [Issues of venue] are matters that touch closely the fair administration of criminal justice and public confidence in it, on which it ultimately rests. These are important factors in any consideration of the effective enforcement of the criminal law. They have been adverted to, from time to time, by eminent judges; and Congress has not been unmindful of them. Questions of venue in criminal cases, therefore, are not merely matters of formal legal procedure. They raise deep issues of public policy in the light of which legislation must be construed. If an enactment of Congress equally permits the underlying spirit of the constitutional concern for trial in the vicinage to be respected rather than to be disrespected, construction should go in the direction of constitutional policy even though not commanded by it.

*United States v. Johnson*, 323 U.S. 273, 276.

These principles apply with equal force in a case with conspiracy allegations. *See United States v. Royer*, 549 F.3d 886, 893 (2d Cir. 2008). In a conspiracy case, the government must prove that at least one act "in furtherance of the charged offence [occurred] in the district of venue." *Id.* at 894. Either the defendants must be physically present in the district when they committed unlawful acts, or the acts must be "intended to have an effect in the district" in order for venue to be proper. *United States v. Muhammad*, 502 F.3d 646, 655 (7th Cir. 2007). Failing that, the defendant must be acquitted or, if convicted, the conviction overturned. *See, e.g., United States v. Geibel*, 369 F.3d 682, 697 (2d Cir. 2004) (conviction on substantive insider trading count vacated when defendant's conduct was "too anterior and remote" to confer venue in the Southern District of New York). Indeed, the Seventh Circuit has observed that the Constitution's venue provisions are "far more than a legal technicality" and can raise complex issues of public policy. *Muhammad*, 502 F.3d at 651.

In this case, the government has not alleged, and cannot allege, a single act by Firtash in the Northern District of Illinois. In addition, the Indictment fails to allege a single act of any identified coconspirator, let alone any act "in furtherance of the charged offense," that occurred in the Northern District of Illinois or was "intended to have an effect" here. Likewise, there is no allegation that money was transferred through the Northern District of Illinois.

Paragraph 16(f) of the Indictment sets forth travel-related conduct in support of purported Travel Act predicate acts to the alleged RICO scheme. Chicago is mentioned twice. First, on July 5, 2009, co-defendant Gajendra Lal supposedly traveled from Chicago to Greensboro, North Carolina, and thereafter had a discussion with Knopp. (Indictment ¶ 16(f)(iv).) Second, on August 16, 2009, Lal purportedly traveled from Chicago to Greensboro, North Carolina, and thereafter had a discussion with a subordinate. (*Id.* ¶ 16(f)(vii).) Neither of these references to

Chicago alleges that an act in furtherance of the conspiracy occurred in the Northern District of Illinois.

The only allegation in the Indictment that the charged conspiracy was connected to the Northern District of Illinois is Paragraph 16(h). But this paragraph only alleges that some unidentified coconspirator(s) used a cell phone "located in" Chicago. It does not, however, allege that anything done with this cell phone: (1) was illegal; (2) took place in the Northern District of Illinois; or (3) was in furtherance of the conspiracy. This is not enough to establish venue.

Furthermore, the Indictment sets forth no facts by which one could establish that it was foreseeable to Firtash that a coconspirator was ever in the Northern District of Illinois or that a cell phone was used there. These miniscule connections with the Northern District of Illinois are insufficient for venue. In a concurring opinion in *Andrews v. United States*, 817 F.2d 1277, 1280 (7th Cir. 1987),[3] for example, Judge Richard Cudahy found that it would "violate basic concepts of criminal responsibility and due process to deem a crime committed at places unknown to the defendant, places the very existence of which he may not have had reason even to suspect." *Id.* (citing *Johnson*, 323 U.S. at 276 (1944)).

In a later case in the Southern District of Indiana, the court analyzed the *Andrews* concurrence and found that it suggested "that the Constitution's criminal venue requirements include some degree of knowledge of the effect on the forum state or district that would make it foreseeable for a defendant to expect to be . . . 'haled into court there.'" *U.S. v. Jang*, No. 1:07-cr-52-DFH-KPF, 2007 WL 4616927, at *7 (S.D. Ind. Dec. 27, 2007) (citing *Burger King v. Rudzewicz*, 471 U.S. 462 (1985) and quoting *World-Wide Volkswagen Corp. v. Woodson*, 444

---

[3] The Seventh Circuit did not rule on the venue issue in *Andrews*, finding the issue waived.

U.S. 286, 297 (1980)).  After comparing cases in which venue was appropriate because of the defendant's presence and actions in a particular forum with cases where venue was appropriate when other people were acting on the defendant's behalf, the court found that "[t]he common thread of [the latter] cases appears to be some degree of knowledge or at least foreseeability of the connection to the forum state or district."  *Id.* at *8-9.

In *United States v. Bezmalinovic,* 962 F. Supp. 435, 441 (2d Cir. 1997), the Second Circuit applied a similar analysis in finding venue improper for a bank fraud prosecution involving a "tenuous" connection with the forum jurisdiction.  There, the defendant committed all the relevant acts at banks in the Eastern District of New York, and his only contact with the Southern District of New York (where charges were pursued), was the cashing and payment of checks through bank clearing houses in Manhattan.  The court found that "the defendant did not intend and could not have foreseen that any acts would occur in the Southern District, and no decisions were made by the target of the fraud in the Southern District.  The only acts that occurred in this district were ministerial in nature."  *Id.*; *see also United States v. Svoboda*, 347 F.3d 471, 483 (2d Cir. 2003) ("[V]enue is proper in a district where (1) the defendant intentionally or knowingly causes an act in furtherance of the charged offense to occur in the district of venue or (2) it is foreseeable that such an act would occur in the district of venue.").

The Indictment does not contain any allegation, foreseeable to Firtash, that the phone of any alleged coconspirator would be used in the Northern District of Illinois or that Lal would travel there.  Venue is improper in the Northern District of Illinois.

## II.     The RICO, Money Laundering, And Travel Act Counts (Counts One, Two, Three, And Four) Fail Because These Statutes Do Not Apply Extraterritorially And Jurisdiction Is Not Proper In The United States.

While "United States law governs domestically, [it] does not rule the world."  *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 454 (2007).  This premise leads to the presumption against

extraterritoriality, a "longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." *Morrison v. Nat'l Australia Bank, Ltd.* 561 U.S. 247 (2010) (citing *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 248 (1991)); *Foley Bros., Inc. v. Filardo*, 336 U.S. 281, 284-285 (1949). This presumption exists to avoid international discord that can result when United States law is applied to conduct in foreign countries. *Kiobel v. Royal Dutch Petroleum Co*., 569 U.S. ____, 133 S. Ct. 1659 (2013); *EEOC v. Arabian Am. Oil Co*., 499 U.S. 244 (1991); *Benz v. Compania Naviera Hidalgo, S.A.* 353 U.S. 138 (1957). The presumption "applies regardless of whether there is a risk of conflict between the American statute and a foreign law," *Morrison* 561 at 255 (citing *Sale v. Haitian Ctr. Council Inc*., 509 U.S. 155, 173-174 (1993)), and reflects the notion that "Congress generally legislates with domestic concerns in mind." *Smith v. United States*, 507 U.S. 197 (1993).

The Indictment does not establish a legal or factual basis for prosecuting Firtash in the United States.

> **A.      The RICO Count Fails Because There Is No Allegation Of A Significant Effect On United States Commerce And Neither The Money Laundering Nor The Travel Act Statutes Apply Extraterritorially Here.**

Count One of the Indictment charges Firtash with a racketeering conspiracy in violation of 18 U.S.C. § 1962(d). In *RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090 (2016), the Supreme Court recently set forth the governing interpretation of extraterritorial application of the RICO statute. The Court held that while there is no requirement that an indictment allege a domestic RICO enterprise, the enterprise must still "engage in or affect in some significant way, commerce directly involving the United States – e.g., commerce between the United States and a foreign country." *Id.* at 2105. Without a direct effect on United States commerce, there is no basis to prosecute an enterprise under the RICO statute. *Id.* Because the Indictment does not set

forth sufficient facts to establish an enterprise significantly affecting United States commerce, this Court should dismiss the RICO count (Count One).

This Court should dismiss the RICO count under *RJR Nabisco* for another independent reason—none of the RICO predicate acts charged in the Indictment have extraterritorial application. *RJR Nabisco* held that the extraterritorial application of RICO's criminal provisions, including its conspiracy provision, 18 U.S.C. § 1962(d), only apply extraterritorially "to the extent that the predicates alleged in [the] case[s] themselves apply extraterritorially." *Id.* at 2102. The Court held that: (1) for RICO to apply extraterritorially, the predicate statute must "manifest an unmistakable congressional intent to apply extraterritorially," (2) not all RICO predicates have extraterritorial effect, and (3) "inclusion of some extraterritorial predicates does not mean that all RICO predicates extend to foreign conduct." *Id.* at 2102. If a predicate statute does not apply extraterritorially, conduct committed abroad is not indictable under the statute and cannot qualify as a predicate RICO act. *Id.*

In this case, neither the money laundering count nor the Travel Act counts apply extraterritorially. *RJR Nabisco* dictates that the RICO statute does not apply extraterritorially here.

> **1. This Court Should Dismiss The RICO Count Because The Charged RICO Enterprise Does Not Affect United States Commerce In A Significant Way.**

The Indictment fails to set forth a single effect that the charged RICO enterprise had on United States commerce, much less the "significant" effect required by *RJR Nabisco*. No project was ever completed in India and no titanium sponge was sold to Company A or anyone else. The Indictment's allegation that Company A entered into a memorandum of agreement specifying that the parties would "work towards entering into a supply agreement" (Indictment ¶¶ 1(d) and (e)), only underlines that there were no actual effects on United States commerce.

10

To "work towards" a supply agreement is different than actually entering into a supply agreement or buying anything. Even accepted as true (which Firtash does not), the Indictment's allegations establish no effect on U.S. commerce. This Court should dismiss Count One on this basis alone.

### 2. The Predicate Money Laundering Statute Does Not Apply Extraterritorially Or Domestically.

This Court should dismiss Count One for the separate and independent reason that RICO does not have extraterritorial application here because neither of the predicate act statutes alleged have extraterritorial application. The Money Laundering and Control Act ("MLCA") statute, 18 U.S.C. § 1956, is one of the two predicate statutes charged as part of the alleged RICO conspiracy. The MLCA explicitly addresses the question of extraterritoriality, stating that a money laundering prosecution is appropriate if, in relevant part, "the [prohibited] conduct is by a United States citizen or, in the case of a non-United States citizen, the conduct occurs in part in the United States." 18 U.S.C. § 1956(f)(1). It is undisputed that Firtash is not a United States citizen. Thus, for the MLCA to apply extraterritorially against him, he must have engaged in conduct occurring, in part, in the United States. Since he did not, the predicate money laundering count does not apply extraterritorially.

While Firtash's counsel searched, they found no case where jurisdiction under 18 U.S.C. § 1956(f)(1) was premised on the transfer of funds through a correspondent bank in the United States or a defendant's knowledge of such transfers. But that is precisely the asserted basis of money laundering jurisdiction here. In a February 16, 2017 letter to the Republic of Austria Federal Ministry of Justice, which this Court can consider,[4] the United States Attorney's Office

---

[4] In ruling on a motion to dismiss for lack of jurisdiction, it is sometimes appropriate to go beyond the face of the Indictment to consider facts related to jurisdiction. *United States v. McPhee*, 336 F.3d 1269, 1271 (11th Cir. 2003). Statements of the view of the United States

for the Northern District of Illinois explained its theory regarding jurisdiction. The United States Attorney's Office wrote that jurisdiction in the United States was "not based simply on the use of *correspondent banks* alone" (emphasis added), and that the government believed that Firtash would have been aware that bribe money "*passed through* United States banks…because the bribes were denominated in U.S. dollars." (emphasis supplied). That is not enough.

Cases finding jurisdiction under 18 U.S.C. § 1956(f)(1) have done so where the transfer of funds originated in the United States. *United States v. Stein*, Crim. A. No. 93-375, 1994 WL 285020, at *5 (E.D. La. June 23, 1994) (defendant initiated a transfer from within the United States to a place outside the United States.); *United States v. Garcia*, 533 F. App'x 967, 982 (11th Cir. 2013) (transferred funds originated in the United States.); *United States v. Approx. $25,829,681.80 in Funds*, No. 98 Civ. 2682, 1999 WL 1080370 (S.D.N.Y. Nov. 30, 1999) (defendant initiated funds transfer from within the United States.). In addition, one Court has found jurisdiction under 18 U.S.C. § 1956(f)(1) when funds were transferred into and out of United States accounts. *United States v. Galvis-Pena*, No. 1:09-cr-25, 2012 WL 425240, at *3 (N.D. Ga. Feb. 9, 2012).

The conduct in this case is different. Here, no funds were transferred within the United States and no United States bank accounts were used. These facts are key because every transfer in the denomination of U.S. dollars must transfer through a United States bank. Finding jurisdiction here would thus extend 18 U.S.C. § 1956(f)(1) jurisprudence far beyond any reported case. In essence, it would mean that any time any part of any case involved business conducted in dollars, the United States could claim jurisdiction over the case no matter how attenuated (or, in this case, nonexistent) the U.S. contacts. That is not the law.

---

Attorney's Office on the precise topic of the banking activity that it relies on for asserting jurisdictions falls squarely within that rule.

In *Cedeno v. Intech Grp., Inc*., 733 F. Supp. 2d 471, 472 (S.D.N.Y. 2010), the Court held that use of U.S. bank accounts was insufficient to create U.S. jurisdiction over money laundering charges or RICO allegations.[5]

> Plaintiffs attempt to sidestep *Morrison* by arguing that their complaint alleges predicate acts of money laundering that involved transfers into and out of this District by U.S. banks.  But as the Court noted in *Morrison*, "it is a rare case of prohibited extraterritorial application that lacks all contact with the territory of the United States and the presumption against extraterritoriality "would be a craven watchdog indeed if it retreated to its kennel whenever some domestic activity is involved in the case.

*Id.* at 473 (quoting *Morrison*, 561 U.S. at 266).

With respect to Firtash himself, the Indictment contains no allegation that Firtash took any action to transfer money originating in the United States or in and out of United States bank accounts.  As the Court acknowledged in *Stein*, Section 1956(f) does not apply to actions of non-U.S. citizens wholly outside the United States.  1994 WL 285020 at *5 (quoting S. Rep. 99-433 at 14).

That Firtash was charged in a RICO conspiracy does not change the result.  Assuming that the actions of the coconspirators are properly attributed to Firtash, the facts alleged are still insufficient to establish U.S. jurisdiction.  No reported United States case has extended the bounds of money laundering jurisdiction to find that momentary transfer through a U.S. correspondent bank based on funds denominated in dollars was sufficient to confer U.S. jurisdiction on an otherwise wholly foreign case.  This Court should not extend money laundering jurisdiction in this manner and should reject the money laundering counts as predicate RICO acts.

---

[5] The RICO portion of the *Cedeno* holding was called into question by *RJR Nabisco*.  *RJR Nabisco* did not, however, alter or question the case's analysis of money laundering charges or its discussion of general principles of limiting U.S. jurisdiction.

The Indictment's allegations likewise fail to set forth facts supporting a domestic application of the money laundering statute. The Indictment alleges that payments were made to advance a wholly foreign conspiracy centering on the alleged bribery of Indian officials. Nothing about the alleged scheme, including the sources or the destinations of payments, has a connection with the United States.

### 3. The Predicate Travel Act Statute Does Not Apply Extraterritorially Or Domestically.

The Travel Act statute, 18 U.S.C. § 1952, is the second of the two predicate statutes charged as part of the alleged RICO conspiracy. The Travel Act prohibits travel in interstate or foreign commerce or use of the facilities of interstate or foreign commerce with the intent to promote illegal activity when the individual thereafter promotes or facilitates the illegal activity. 18 U.S.C. § 1952(a). As with the money laundering count, because the Travel Act counts do not have extraterritorial application, the RICO count fails.

### a. The Travel Act Is Not Extraterritorial

In *European Community v. RJR Nabisco, Inc.*, 764 F.3d 129, 144 (2d Cir. 2014), the Second Circuit noted the Supreme Court's holding in *Morrison* that a "general reference to foreign commerce…does not defeat the presumption against extraterritoriality." *Morrison*, 561 U.S. at 262. The Second Circuit thus held that *Morrison* forecloses any reading of the Travel Act statute to cover wholly foreign travel or communication and that the Travel Act's references to foreign commerce do not indicate that it applies extraterritorially. *European Community*, 764 F.3d at 142. When the Supreme Court issued its decision in the same case, it did not alter the Second Circuit's Travel Act analysis. *RJR Nabisco*, 136 S. Ct. at 2105. As such, the Second Circuit's conclusion holds and the Travel Act does not apply extraterritorially.

14

### b. The Travel Act Does Not Have Domestic Application

Under *RJR Nabisco*, if a statute is not extraterritorial—as with the Travel Act—a court must examine whether the case nevertheless involves a domestic statutory application. *RJR Nabisco*, 136 S. Ct. at 2101. This examination requires a review of the statute's "focus;"

> If the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application even if other conduct occurred abroad; but if the conduct occurred in a foreign country, then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory.

*Id.*

The gravamen of a Section 1952 charge is interstate or foreign travel with the intent to promote, carry on, or further an unlawful activity, and the performance of some act after the interstate or foreign travel designed to promote, carry on or further that illegal purpose. *United States v. Vanichromanee*, 742 F.2d 340 (7th Cir. 1984); *United States v. Briggs*, 700 F.2d 408 (7th Cir. 1983). The "unlawful activity" or "illegal purpose" relevant to the Travel Act's focus in this case is the alleged conduct of non-U.S. companies and foreign nationals bribing Indian officials in India for a project to be undertaken in India. None of the travel listed in the Indictment is relevant to the Travel Act's focus and none of it sufficiently supports jurisdiction in the United States.

### i. Interstate Travel Is Irrelevant To Whether The Travel Act Can Apply To Foreign Conduct.

The majority of the case law interpreting the Travel Act analyzes whether the interstate activity alleged is sufficient to confer federal jurisdiction. *See, e.g., United States v. Altobella*, 442 F.2d 310 (7th Cir. 1971) (purpose of Travel Act is to attack criminal activity extending beyond borders of one state by providing federal assistance in situations in which local law enforcement is ineffective). This case is different.

Here, the Indictment charges various instances of travel—not to confer jurisdiction on federal versus state courts—but in an attempt to establish United States jurisdiction over an entirely foreign operation in foreign jurisdictions.  The relevant inquiry is thus whether there is enough connection between the United States and the foreign jurisdictions where these foreign operations took place.  As such, the Travel Act's extraterritoriality analysis must focus on foreign travel.  Indeed, since federal/state jurisdiction is not at issue here, recitations in the Indictment of interstate travel are irrelevant.  (*See* Indictment ¶ 16 (f) (i), (ii), (iv), (v), and (vii), relying on travel between New York and Washington, Ohio and Washington, Chicago to North Carolina, and North Carolina to New York.)

### ii. The Two Allegations Of Foreign Travel In The Indictment Are Incidental And Do Not Support Travel Act Jurisdiction.

The Indictment does not allege Travel Act violations that would allow for the domestic application of the Travel Act statute.  Put differently, the connection between the allegations in the Indictment and the United States are insufficient to support U.S. jurisdiction.  Of the seven purported Travel Act violations in the Indictment, only two involve foreign travel.  First, the indictment alleges that Lal traveled from North Carolina to Hyderabad, India, "for the purpose of attending a meeting with Firtash, Knopp and others concerning the progress of the project." (Indictment ¶ 16 (iii).)  Second, the Indictment alleges that Lal traveled from North Carolina to New Delhi, India, and "thereafter met with Individual C and discussed with Individual C the transfer of additional funds intended for use to bribe Indian public officials."  (Indictment ¶ 16 (vii).)  Neither supports the legitimate exercise of United States Travel Act jurisdiction.

The Supreme Court has held that Congress did not intend a "broad ranging interpretation" of the Travel Act.  *Rewis v. United States*, 401 U.S. 808, 812 (1971).  Likewise, the Seventh Circuit has held that "in 'a Travel Act prosecution the interstate travel . . . must

16

relate significantly, rather than incidentally or minimally, to the illegal activity.'" *United States v. Muskovsky*, 863 F.3d 1319, 1327 (7th Cir. 1988). "[F]ortuitous or incidental" travel across state borders is insufficient to support a charge under the Travel Act. *United States v. McNeal,* 77 F.3d 938, 944 (7th Cir. 1996). The Seventh Circuit routinely reverses Travel Act convictions where the connection between the travel and the illegal activity was attenuated. *See, e.g.*, *Altobella*, 442 F.2d at 313-16 (reversing a conviction under the Travel Act after finding the interstate travel of an extortion victim's money was insufficient to support federal authority); *United States v. Isaacs*, 493 F.2d 1124 (7th Cir. 1974) (fact that Illinois checks with bribe money cleared through Missouri did not confer Travel Act jurisdiction); *United States v. McCormick*, 442 F.2d 316 (7th Cir. 1961) (fact that defendant advertised out of state for his gambling operation did not confer Travel Act jurisdiction).

The Indictment fails to allege travel meeting the standards described above. Lal lived in North Carolina during the 2009 period on which the Travel Act counts are based. The fact that he travelled to India from North Carolina twice for meetings is a function of the fact that he lived in North Carolina. The travel was incidental to any other purpose he may have had. This is precisely the type of case to which the Seventh Circuit has rejected the application of the Travel Act. *See e.g.*, *United States v. Botticello*, 422 F.2d 83 (2d. Cir. 1970) (Travel Act required a more intimate relationship between the travel and performance of a wrongful act than that established by defendant making a threat in New Jersey and thereafter returning to his home in New York)[6].

_____

[6] And the allegation in paragraph 16(f)(ii) of the Indictment—in which co-defendant Gevorgyan traveled from Ohio to Washington and "met with representatives of Company A and discussed, among other things, the progress of the project"—does not support the Travel Act charges either because the Indictment does not allege an illegal purpose related to that travel. There is nothing improper about a discussion of the progress of the Indian project.

### iii. U.S. Email And/Or Cell Phone Use Unconnected And/Or Incidental With Illegal Activity Does Not Support Travel Act Jurisdiction.

The Indictment attempts to connect the wholly foreign conduct it charges to the United States by alleging that United States email servers and cell phone networks were used by some codefendants. (Indictment ¶¶ 16 (g) and (h).) But the only allegations that would necessitate the use of U.S. servers or cell networks were: (1) that Company A had offices in Chicago, Illinois, and Seattle, Washington, and (2) that Lal lived in North Carolina.

The Indictment includes no allegation that Company A was in any way aware of or involved in the bribery scheme alleged in the Indictment. Discussions with Company A were not intended to advance and did not advance an illegal purpose and thus cannot serve as a basis for Travel Act jurisdiction in the United States. And, while Lal lived in North Carolina for a time— allegedly necessitating some U.S. cell phone or email use—that use was entirely incidental to the foreign conduct charged and cannot confer Travel Act jurisdiction in the United States.

Put simply, the Indictment's Travel Act allegations constitute precisely the type of insignificant U.S. connection that the Supreme Court rejected for U.S. jurisdiction. In *RJR Nabisco*, 136 S. Ct. at 2101, the Court held that if alleged conduct "occurred in a foreign country, then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory." The fact that there were certain actions of certain codefendants that allegedly took place in the United States is irrelevant. The conduct alleged in this Indictment is unmistakably foreign. There is no basis to allow the Travel Act charges forward in this case.

**B.      There Is No Jurisdiction For The Money Laundering (Count Two)**

For all of the reasons set forth in Section II.A.2. above, the United States lacks jurisdiction to prosecute the money laundering count and this Court should thus dismiss Count Two for lack of jurisdiction as well.

**C.      There Is No Jurisdiction For The Travel Act Counts (Counts Three And Four)**

For all of the reasons set forth in Section II.A.3. above, the United States lacks jurisdiction to prosecute the Travel Act counts and this Court should dismiss Counts Three and Four for lack of jurisdiction too.

**III.     The FCPA Charge Fails For Lack Of Jurisdiction In The United States.**

Count Five alleges that Firtash conspired with other co-defendants to violate the Foreign Corrupt Practices Act ("FCPA"), 15 U.S.C. § 78dd-1 *et seq.*  The FCPA prohibits the bribery of foreign officials by "domestic concern[s]" or by foreign persons who commit bribery while physically present in the United States.   *See* 15 U.S.C. §§ 78dd-2 (a),[7] 78dd-3(a)[8] (relevant

---

[7] To establish a violation of § 78dd-2(a), prosecutors must prove beyond a reasonable doubt that (a) the defendant was a "domestic concern" or an officer, director, employee, or agent of a "domestic concern"; (b) that he used the mails or any means or instrumentality of interstate commerce; (c) "corruptly"; (d) in furtherance of an offer, payment, promise to pay, or authorization for the payment of any money, or offer, gift, promise to give, or authorization of the giving of anything or value; (e) while knowing that all or a portion of such money or thing of value will be offered, given, or promised, directly or indirectly, to any foreign official or to any foreign political party or official thereof; (f) for the purpose of influencing any act or decision in an official capacity, inducing an act or omission to act in violation of official duty, securing any improper advantage, or inducing the use of influence to affect an act of the government or an instrumentality of the government; and (g) in order to assist in obtaining or retaining business or directing business to any person.  *See* 15 U.S.C. § 78dd-2(a); *United States v. Jefferson*, 594 F. Supp. 2d 655, 667 (E.D. Va. 2009).  In addition, to establish that a natural person committed a criminal violation, the prosecution must prove that (h) the defendant "willfully" violated § 78dd-2(a).  *See* 15 U.S.C. § 78dd-2(g)(2)(A).

[8] To establish a violation of § 78dd-3(a), the elements of the crime are the same as in § 78dd-2(a), *see supra* n.6, except that the prosecution must prove beyond a reasonable doubt that the defendant was a "person," or any officer, director, employee, or agent of such person, while in

FCPA provisions).  Firtash is not alleged to be a "domestic concern" or to have committed a single act, much less a single act related to bribery, in the United States.  If the Indictment related only to Firtash, it would fail on this basis alone.

Because the Indictment charges a conspiracy, this Court must analyze whether the actions of Firtash's alleged coconspirators—even those he was not alleged to have participated in—are sufficient to justify the application of the FCPA against him.  Notably, the Indictment does not state that any of Firtash's alleged coconspirators "committed bribery" while in the United States.  The most the Indictment charges is that certain communications related to the alleged bribery scheme were made in the United States.  This does not sufficiently support the FCPA charge and this Court should dismiss it.

Even if the Court were to construe communications from the United States as sufficient to constitute committing bribery from the United States, which it should not, the FCPA count still fails.  The FCPA statute is restricted by its terms to an individual defendant's actions in the United States and it is impermissible to extend FCPA jurisdiction over Firtash by appealing to the conspiracy statute.

A recent case from Connecticut analyzed precisely this topic.  In *United States v. Hoskins*, 123 F. Supp. 3d 316 (D. Conn. 2015), the court considered whether the government could prosecute a non-resident foreign national in the United States, using a conspiracy theory, for FCPA violations and even if that non-resident foreign national was not an agent of domestic concern and did not commit any acts while physically present in the United States.  After

---

the territory of the United States, instead of proving that the defendant was a domestic concern or an officer, director, employee, or agent of a domestic concern.  *See* 15 U.S.C. § 78dd-3(a).  In addition, instead of proving that the defendant made use of the mails or any means or instrumentality of interstate commerce in furtherance of a bribe, the government can also establish a violation of § 78dd-3(a) by proving beyond a reasonable doubt that the defendant did "any other act" in furtherance of a bribe while in the territory of the United States.  *Id.*

meticulously analyzing the legislative history of the FCPA, the Court concluded that it would not have jurisdiction if the defendant was not an agent of domestic concern. *Id.* at 323-327. Ultimately, the Court dismissed the charges. *Id.*

The *Hoskins* defendant and his alleged co-conspirators were charged with carrying out a scheme to bribe Indonesian officials to assist their company in the award of a contract for building a power station in Indonesia. *Id.* at 318. According to the indictment, the defendant was involved in acts of bribery on behalf of his company's U.S. subsidiary, which actively participated in the scheme. *Id.* Despite the significant illicit bribery activity carried out in and from the United States by the company's U.S. subsidiary, the court found that as a non-resident, non-citizen of the United States, there was no basis to prosecute the *Hoskins* defendant if he could not be proved to be an agent of domestic concern. *Id.* at 327. The court further recognized that if there was no basis to charge the defendant himself, a conspiracy theory of liability could not support prosecution under the FCPA either. *Id.*

Supporting its reasoning, *Hoskins* pointed to the Supreme Court's decision in *Gebardi v. United States*, 287 U.S. 112 (1932). The court noted *Gebardi*'s holding that when Congress chooses to exclude a class of individuals from liability under a particular statute, "the Executive [may not] . . . override the Congressional intent not to prosecute" by charging an individual with the conspiracy to violate a statute that the individual could not violate directly. *Hoskins*, 123 F.Supp.3d at 321 (citing *United States v Castle*, 925 F.2d 831, 833 (5th Cir. 1991)); *see also United States v. Bodmer*, 342 F. Supp. 2d 176, 181 n.6 (S.D.N.Y 2004) ("In *Gebardi*, the Supreme Court held that where Congress passes a substantive criminal statute that excludes a certain class of individuals from liability, the Government cannot evade Congressional intent by charging those individuals with conspiring to violate the same statute.")

21

*Hoskins* analyzed the "text and structure" of the FCPA to determine if Congress intended the statute to apply to nonresident foreign nationals when they were not agents of a domestic concern and did not take actions in furtherance of a corrupt payment in the United States. *Hoskins*, 123 F. Supp. 3d at 322. The court relied on case precedent and on the legislative history of the FCPA to conclude that Congress did *not* intend for the FCPA to apply to this class of individual.

The court noted that in *United States v. Castle*, 925 F.2d 831, 832 (5th Cir. 1991), for example, the Fifth Circuit applied *Gebardi* to conclude that foreign officials who accept bribes could not be prosecuted for conspiracy to violate the FCPA if they could not be prosecuted directly for the same conduct under the FCPA. Like *Hoskins*, *Castle* reviewed the legislative history of the FCPA to conclude that in enacting the FCPA, Congress was aware that it "could consistently with international law reach foreign officials in certain circumstances," but did not want to risk the "'inherent jurisdictional enforcement, and diplomatic difficulties' raised by the application of the bill to non-citizens of the United States." *Castle,* 925 F.2d at 835 (quoting H.R. Conf. Rep. No. 831, 95th Cong., 1st Sess. 14, reprinted in 1977 U.S. Code Cong. & Admin News 4121, 4126).

According to *Castle*, the FCPA included an affirmative legislative intent to leave unpunished a defined group of people necessary to the acts of foreign bribery that may have formed the basis of an FCPA violation. *Id.* at 836. Based on the text and the legislative history of the FCPA, *Castle* and *Hoskins* concluded that by listing all of the persons or entities the government could prosecute under the FCPA, Congress "intended that these persons would be covered by the Act itself, without resort to the conspiracy statute." *Hoskins,* 123 F.Supp.3d at

325, *Castle*, 925 F.2d at 836. *Castle* and *Hoskins* thus concluded that resorting to conspiracy could not circumvent that Congressional intent for foreign nationals like Firtash. *Id.*[9]

That FCPA jurisdiction does not apply here is even more apparent than in *Hoskins*. Firtash's companies had no United States subsidiary and zero United States connection. In addition, neither he nor any other co-defendant have been accused of conducting a single act of bribery either within the United States or directed toward the United States. Congress intentionally intended to exclude this type of case from the reach of the FCPA. And the Indictment cannot circumvent Congress's intent with respect to the FCPA by charging conspiracy. This Court should dismiss Count Five, the FCPA count.

**IV.    This Court Should Dismiss The Indictment Because Prosecuting Firtash In The United States Violates His Due Process Rights.**

Apart from the above, the Indictment also fails because it violates Firtash's due process rights. Due process protects a defendant's right not to be coerced except by lawful judicial power. *Giaccio v. Pennsylvania*, 382 U.S. 399 (1966). A court may subject a defendant to

---

[9] The D.C. Circuit analyzed issues similar to those considered in *Hoskins* and *Castle* and reached the same conclusion. In *United States v. Ali*, 718 F.3d 929 (D.C. Cir. 2013), the court concluded that it did not have jurisdiction to prosecute a defendant for conspiracy to commit piracy on the high seas. The court found that while the United States had jurisdiction to prosecute the defendant for "piracy," conspiracy to commit piracy did not fall within the technical definition of "piracy" and prosecution of the conspiracy offense was improper. *Id.* at 942. The Supreme Court recognized this basic principle in *Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659 (2013), as well. There, the Court held that the presumption against extraterritorial application of United States statutes applied to bar claims under the Alien Torts Act for conduct that took place outside the United States. This held even if a United States corporation was involved. The Court observed that "[w]hen a statute provides for some extraterritorial application, the presumption against extraterritoriality operates to limit that provision to its terms." *Id.* at 1667 (citing *Morrison,* 561 U.S. 264). This reasoning applies with equal force in the FCPA context. The presumption against extraterritoriality means that statues limiting jurisdiction require application according to their precise terms. The FCPA statute does not specify prosecution of conspiracies as an exception to the jurisdictional limitations of the FCPA. *Kiobel* thus confirms that by disallowing jurisdiction over an FCPA conspiracy, the *Hoskins* court reached the correct result.

jurisdiction only when the defendant has sufficient contacts with the sovereign "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

This Indictment violates Firtash's due process rights. Federal courts routinely recognize that foreign nationals facing criminal prosecutions have due process rights under the Fifth Amendment of the United States Constitution. *See, e.g., United States v. Hayes*, No. 12 MJ 3229, 2015 WL 1740830, at \*3-4 (S.D.N.Y. Mar. 20. 2015) (finding that a criminal complaint creates a cognizable relationship between a foreign defendant and the court in which the complaint has been filed such that the defendant may properly challenge due process violations in that forum); *In re Hijazi*, 589 F.3d 401 (7th Cir. 2009) (Lebanese citizen living in Kuwait properly raised due process objections to his Indictment); *United States v. Noriega*, 683 F. Supp. 1373, 1374-75 (S.D. Fl. 1988) (indicted *de facto* head of a foreign government permitted to file motion attacking indictment based on due process concerns).

While the fact that foreign defendants have due process protections has been established, circuits are split as to how to evaluate a violation of those rights stemming from an insufficient connection between the defendant and the United States. The Second and Ninth Circuits have held that it is permissible for a defendant to be charged in the United States provided that there is a "sufficient nexus" between the defendant and the United States. *United States v. Yousef,* 327 F.3d 56, 111-12 (2d Cir. 2003), *United States v. Davis,* 905 F.2d 245, 248-49 (9th Cir. 1990). The First and Third Circuits, on the other hand, look to principles of international law to determine the permissibility of a defendant being charged in the United States. *United States v.*

*Cardales*, 168 F.3d 548, 553 (1st Cir. 1999); *United States v. Martinez-Hidalgo*, 993 F.2d 1052, 1056 (3d Cir. 1993).  The Supreme Court has not addressed the issue.

Under either the sufficient nexus standard or based on application of principles of international law, Firtash lacks the required connection to the United States such that this Indictment violates his due process rights.  Because the Seventh Circuit has indicated that it would apply international law principles to this question, this section will first analyze due process under international law principles and then briefly discuss the outcome under the substantial nexus test.

### A. The Indictment Violates Firtash's Due Process Rights As A Matter Of International Law.

The closest the Seventh Circuit has come to considering the proper standard to evaluate whether a criminal prosecution of a foreign national for acts occurring outside the United States violates his due process rights is *In re Hijazi*, 589 F.3d at 401.  In *Hijazi*, the Seventh Circuit issued a Writ of Mandamus under the All Writs Act directing the district court to take up the defendant's motion to dismiss the indictment for lack of jurisdiction and due process violations. *Id.* at 406-412.  The district court had held defendant's motion in abeyance, finding that because the defendant was a fugitive, his motion was improper pursuant to the Fugitive Disentitlement Act.  The Seventh Circuit disagreed, finding that the defendant was not properly categorized as a fugitive and was entitled to have his motion decided.  *Id.* at 412-414.  The Seventh Circuit further noted that while it was not ruling on the merits of the motion to dismiss, the outcome was uncertain.

The Seventh Circuit considered whether a defendant's contacts with the United States are adequate to allow a United States prosecution by asking "how much is enough?"  *Id.* at 411.  The court described the standard as follows:

> The Restatement (Third) of Foreign Relations Law, to which the Supreme Court referred with approval in *Hoffman-La Roche*, *see* 542 U.S. at 164-65, 124 S.Ct. 2359, takes the position that "[s]ubject to § 403, a state has jurisdiction to prescribe law with respect to…conduct outside its territory that has or is intended to have a substantial effect within its territory." Restatement (Third) of Foreign Relations § 402 (A.L.I 1987). Section 403 qualifies all of § 402 by stipulating that a state may not exercise prescriptive jurisdiction "when the exercise of such jurisdiction is unreasonable," and it then goes on to specify eight circumstances that might indicate unreasonableness. *Id.* § 403(2). The first of these looks at how strong the link is between the activity and the territory of the regulating state and calls for consideration of "the extent to which the activity takes place within the territory or has substantial, direct, and foreseeable effects upon or in the territory. *Id.* § 403(2)(a). In *United States v. Nippon Paper Indus. Co.*, 109 F.3d 1 (1st Cir. 1997), the First Circuit applied those principles to a criminal prosecution.

*Id.* at 412.

On remand, the District Court observed that the Seventh Circuit "indicated that this Court should look to principles of international law to determine whether Hijazi's contacts with the United States were sufficient to support his prosecution." *United States v. Hijazi*, 845 F. Supp. 2d 874 (C.D. Ill. 2011) (citing *Hijazi*, 589 F.3d at 411-412). The Court further noted the Seventh Circuit's citation to the Restatement (Third) of Foreign Relations Law and found, based on the "language by the Seventh Circuit and the fact that numerous other courts have applied principles of international law to the determination of whether due process was satisfied, [that the] appropriate due process analysis [must be] performed under the rubric of international law." *Id.* at 883; *see also United States v. Kashamu*, 15 F. Supp. 3d 854, 866-867 (N.D. Ill. 2014) (recognizing that the Seventh Circuit has indicated that courts should look to principles of international law to determine if a defendant's contacts with the United States are sufficient to support the prosecution).

Conducting this analysis, the District Court began with Section 402 of the Restatement (Third) of Foreign Relations Law. Section 402 provides:

> Subject to § 403, a state has jurisdiction to prescribe law with respect to…(1) (C) conduct outside its territory that has or is intended to have substantial effect within its territory;…and (3) certain conduct outside its territory by persons not its nationals that is directed against the security of the state or against a limited class of other state interests.

Section 402 of the Restatement (Third) of Foreign Relations Law. These principles have been described, respectively, as the objective territorial theory and the protective territorial theory. In cases involving allegedly criminal acts performed by a non-resident alien on foreign soil, "courts in the United States have long held that if jurisdiction is to be extended over that act, it must be supported by either the Protective or the Objective territorial theory." *Hijazi*, 845 F. Supp at 883 (citing *United States v. Columbo-Colella*, 604 F.2d 356, 358 (5th Cir. 1979)).

The Indictment here thus fails unless the conduct charged was either intended to have a substantial effect within the United States or was directed against the security of the United States or some other United States interest. *Id.* The Restatement (Third) of Foreign Relations § 403(1) also requires that the prosecution be "reasonable." While this inquiry is context-specific, the Restatement provides a series of relevant factors for assessment:

> (a) the link of the activity to the territory of the regulating state, ie the activity…has substantial, direct, and foreseeable effect upon or in the territory;…(c) the character of the activity to be regulated; (d) the existence of justified expectations that might be protected or hurt by the regulation;… (f) the extent to which the regulation is consistent with the traditions of the international system; [and]; (g) the extent to which another state may have an interest in regulating the activity.

Restatement (Third) of Foreign Relations § 403(2). Prosecuting Firtash in the United States fails these tests. Firtash's alleged actions have no substantial effect on the United States and do not affect its security or some other interest. In addition, the prosecution is unreasonable.

1.  **The Allegations Against Firtash Have No Substantial Effect On The United States And Do Not Impact The Security Of The United States Or Any Other Interest.**

The Indictment alleges that Firtash oversaw and/or directed a scheme to bribe Indian officials in connection with a mining project in India. None of the Firtash entities that purportedly participated in a bribery scheme were United States entities, and none of them had business in the United States. Firtash is a Ukrainian citizen, has never set foot in the United States, has never applied for a United States visa, and speaks no English. Knopp, who was supposedly appointed to oversee portions of the Indian project, did not reside in the United States during the period of the charged conduct and did not transact business for Firtash companies from within the United States.

The charged conduct does not have substantial effect on the United States based on Company A, which considered purchasing but never actually purchased materials generated from the India project and which is not alleged to have any involvement in any bribery scheme regarding the India project. And even if money passed through United States-dollar-denominated accounts or if internet or cell phone services based in the United States were used, that is not enough to create a substantial effect on the United States. If such minor incidental "connections" to the United States could serve as a basis of jurisdiction, almost any business transaction could, rendering basic principles of international law and the presumption against United States jurisdiction voiced by the Supreme Court in *Microsoft* meaningless. That is not the law.

The Indictment's allegations likewise fail to set forth an impact on a security interest or any other interest of the United States. Even if the government could prove that there existed a scheme to bribe Indian officials in India, the conduct does not implicate any legitimate or other United States interest. No United States company or person was involved in the alleged bribe

scheme. No part of the scheme took place in the United States. Neither the United States government, nor any entity connected to the United States government, was damaged or affected by this scheme. No United States banks, phone carriers, or internet services providers were affected by the charged conduct in any way.

And while co-defendant Lal lived in North Carolina, that has zero relevance to the security interest of the United States. And Company A, which never actually bought anything as a result of the alleged scheme, is not alleged to have known of the scheme and could not have suffered as a result. Allowing a United States prosecution on the facts set forth in this Indictment would amount to the authorization of world-wide policing by the United States, even over matters unrelated to United States interests or investments. That is improper. *See, e.g.*, *United States v. Sidorenko*, 102 F. Supp. 3d 1124, 1132-33 (N.D. Cal. 2015) (noting that under the government's theory of extraterritoriality, there would be no limit to the United States' ability to police foreign individuals on matters completely unrelated to the United States' investments, which "is not sound foreign policy, it is not a wise use of scarce federal resources, and it is not, in the Court's view, the law.").

The lack of "substantial effect" of the conduct charged in the Indictment, and of any connection to the security or other interests of the United States, is underscored by a review of other cases analyzing international law and principles of due process. Cases justifying prosecution of foreign citizens for foreign conduct always have a direct and obvious impact on United States finances or the safety and security of its citizens. The same is not true here and the instant prosecution violates Firtash's due process rights.

*Hijazi* found prosecution permissible because the defendant devised a scheme to inflate the cost of fuel tankers used to supporting military operations in Kuwait by $3.5 million—a sum

29

that was to be paid by the United States government. 845 F. Supp. 874, 885 (C.D. Ill. 2011). And even in light of those facts, the Seventh Circuit stated that the outcome of defendant's due process challenge was "by no means a foregone conclusion." *Hijazi,* 589 F.3d 401, 412 (7th Cir. 2009).

Other cases involve the same type of direct implication on United States interests, often involving terrorism or drug trafficking. In *United States v. Al Kassar*, 660 F.3d 108 (2d Cir. 2014), the Second Circuit held that the prosecution of a defendant did not violate his due process rights under a sufficient nexus analysis where the defendant was alleged to have conspired to kill United States officers by supporting a known terrorist organization. *See also United States v. Yousef*, 327 F.3d 56 (2d Cir. 2011) (assertion of protective jurisdiction proper when the defendant was charged with conspiring to bomb a United States commercial airliner and with involvement in the 1993 World Trade Center bombing); *United States v. Mostafa*, 965 F. Supp. 2d 451 (S.D.N.Y. 2013) (prosecution of defendant did not violate due process when his nexus to the United States included assisting Al Qaeda organization by conspiring to detain United States nationals, taking United States citizens hostage and collecting money in New York to fund terrorist cases); *United States v. Brehm*, 691 F.3d 547, 552-553 (4th Cir. 2012) (prosecution of a South African citizen did not violate his due process rights when defendant was charged with stabbing a British citizen at a United States airbase in Afghanistan in that the incident affected the American interest of law and order at the airbase); *United States v. Peterson*, 812 F.2d 486, 494 (9th Cir. 1987) (finding that the defendant's conduct had a sufficient nexus with the United States where he threatened the security of the United States by possessing narcotics in United States customs waters for distribution within the United States and noting that drug trafficking threatened the security of the United States); *Davis*, 905 F.2d at 245 (prosecution did not violate

defendant's due process rights when he was heading to San Francisco with 7,000 pounds of marijuana that he intended to smuggle into the United States).

Cases outside the realm of drug trafficking and terrorism are typically only justified where the conduct involved has a direct effect on the security of the United States. In *United States v. Budovsky*, No. 13cr368, 2015 WL 5602853 (S.D.N.Y. Sept. 23, 2015), for example, prosecution of a Costa Rican company was deemed acceptable under a sufficient nexus analysis when the company was structured as a business venture designed to assist criminal conduct in the United States and to harm United States citizens. The Court found connections to the United States, including 200,000 users of the defendant company's services in the United States (including criminal rings operating in the United States) and the laundering of $6 billion in criminal proceeds with the object of transferring funds into and out of the United States. *Id.* at *4-5.

But the allegations in this case come nowhere near those involved in the cases described above. And when the foreign conduct alleged does not have the required nexus with the United States, courts find due process violations. In *United States v. Perlaza*, 439 F.3d 1149 (9th Cir. 2006), for example, the Court reversed the convictions of the defendants and ordered the district court to dismiss their indictments when there was not a sufficient nexus between the conduct of the defendants and the United States. There, the defendants included the crew of a foreign flagged ship charged and convicted of conspiracy to distribute cocaine to the United States and who were found to have aided and abetted another group of defendants over whom the Court had jurisdiction. *Id.* at 1168. Finding that the government failed to establish the required nexus between the defendants' allegedly prohibited activities and the United States, the Court found that the prosecution constituted a due process violation.

Similarly, in *Sidorenko*, 102 F. Supp. 3d at 1124, the Court held that prosecution of the defendant violated his due process rights when the government failed to establish a sufficient nexus between the defendants and in the United States. One of the defendants worked for ICAO, an international organization that was 25% funded by the United States. *Id.* at 1126. Two other defendants were charged with bribing the defendant who worked at ICAO to abuse his position there. *Id.* The Court held that the financial interest of the United States in ICAO did not constitute a sufficient nexus between the charged conduct and the United States. *Id.* at 1132. The Court also rejected the government's contention that the fact that some of the ICAO offenses involved travel and identity documents implicated United States security interests. *Id.* at 1133. The Court stated: "[the government's] argument that any financial or security interest supports a domestic nexus proves too much. If everything that had an impact on national security gave the United States the right to drag foreign individuals into court in this country, the minimum contacts requirement be meaningless." *Id.*

In *Columbo-Collela*, 604 F.2d at 356, the Court reversed a defendant's criminal theft conviction, holding that it was improper for the Court to assert jurisdiction over a defendant who agreed to sell a stolen car in Mexico despite the fact that the theft of the car occurred in the United States. The Court acknowledged that the ruling could have negative effects in the United States, observing, "unfortunately, the legally correct result produces something like open season on motor vehicles in American border towns." *Id.* at 657. Nevertheless, the Court concluded that when the actions of the foreign defendant took place entirely outside U.S. borders, it was improper to prosecute him in the United States.

Similarly, in *Abelesz v. OTP Bank*, 692 F.3d 638 (7th Cir. 2012), the Seventh Circuit issued a Writ of Mandamus to review what it found was the district court's erroneous assertion

of jurisdiction over two Hungarian banks.  In *Abelesz,* the plaintiff filed a complaint against the Hungarian banks for their role in expropriating property of Jewish Hungarian citizens to finance the genocide of holocaust in Hungary.  *Id.* at 644.  The Seventh Circuit held that the district court lacked constitutional power to assert jurisdiction over the banks despite the facts that: (1) the Hungarian banks had thousands of United States citizens as account holders; (2) the banks had corresponding banking and contractual relationships with United States banks and companies; (3) personnel from the banks traveled to the United States on business; and (4) the banks advertised in United States publications and targeted United States customers.  *Id.* at 656-657.

Firtash's case has far less connection to the United States than these cases.  Unlike *Perlaza*, the conduct at issue here does not relate to a criminal operation intended to have an effect in the United States.  Unlike *Sidorenko*, the United States has zero interest in the companies that are alleged to have participated in the India project and there are no allegations of travel or identity that remotely affected United States security.  Unlike *Columbo-Colella*, the allegations in the Indictment have no direct effect on the property interests of United States citizens.  Unlike *Abelesz*, the persons and entities over whom jurisdiction is sought lack the deep, regular connections with the United States that the Hungarian banks maintained.  Because the conduct charged in the Indictment has neither a substantial effect on the United States nor implicates a United States security or other interest, the assertion of jurisdiction violates Firtash's due process rights.  For that reason, this Court should dismiss the Indictment.

### 2.     Prosecution Of Firtash In The United States Is Unreasonable.

The Restatement (Third) of Foreign Relations requires—even where the government is able to meet the substantial effect or security interest tests— that the prosecution of a foreign citizen for conduct taking place outside the United States be reasonable.  Here, jurisdiction is unreasonable.  There is no link between the United States and the conduct charged in the

Indictment nor did the alleged conduct have any effect on the United States. The character of the activity at issue is that of alleged bribes paid outside of the United States to Indian officials. This is entirely unrelated to the United States and does not support a reasonable prosecution here.

In assessing reasonableness, the Restatement considers "the extent to which another state may have an interest in regulating the activity." India, not the United States, has that interest. Indeed, the Indictment at ¶ 1(g) specifically alleges that there were "in force and effect criminal statutes of the Republic of India prohibiting bribery of public officials, including the Prevention of Corruption Act, 1988." But there is no allegation that Indian authorities have pursued, or are pursuing, any criminal charges related to this case. If India had an interest in bringing a criminal case related to facts set forth in the Indictment it could have. *United States v. Lloyds TBS Bank PLC,* 639 F. Supp. 2d 314 (S.D.N.Y. 2009) (declining to assert jurisdiction over Swiss bank and observing that Switzerland and not the United States has a strong interest in maintaining Swiss banking integrity); *United States v. Javino,* 960 F.2d 1137, 1143 (2d Cir. 1992) (reversing criminal conviction under the National Firearms Act finding that it was unreasonable to prosecute foreign manufacturers of firearms even if the firearms were used in the United States); *Europe & Overseas Commodity Traders, SA v. Banque Paribas London*, 147 F.3d 118, 131 (2d Cir. 1988) (affirming dismissal of foreign investors against foreign defendants under federal securities law holding; "Congress may not be presumed to have prescribed rules governing activity with strong connection to another country if the exercise of jurisdiction would be unreasonable in light of established principles of U.S. and international law.")

In short, the Indictment fails, not only because it does not allege facts setting forth a substantial effect on the United States or an implication of a United States security interest, but also because it is unreasonable.

**B.     The Indictment Violates Firtash's Due Process Rights Because There Is No Substantial Nexus Between The Conduct Charged In The Indictment And The United States.**

The conduct charged in the Indictment has no connection to the United States, much less the "substantial nexus" required by the case law.  As described in Section IV.A above, courts affirming the assertion of jurisdiction by United States courts only do so in circumstances radically different from those presented here—circumstances where the connection to the United States territory or interests is obvious.  Those circumstances are not present here and this Court should dismiss the Indictment.

## <u>CONCLUSION</u>

For the reasons described above, Firtash respectfully requests that this Court enter an order dismissing the Indictment against him.


Dated:  May 9, 2017                              Respectfully submitted,


                                                                 */s/ Dan K. Webb*_____

                                                                 Dan K. Webb
                                                                 WINSTON & STRAWN LLP
                                                                 35 West Wacker Drive
                                                                 Chicago, IL 60601
                                                                 (312) 558-5600

                                                                 *Attorney for Dmitry Firtash*

<u>**CERTIFICATE OF SERVICE**</u>

I, Dan K. Webb, hereby certify that on May 9, 2017, **Dmitry Firtash's Memorandum of Law in Support of His Motion to Dismiss the Indictment** was served upon the following by electronic mail:

Amarjeet Singh Bhachu
UNITED STATES ATTORNEY'S OFFICE
219 South Dearborn Street
Suite 500
Chicago, IL 60604
(312) 353-5300


*/s/ Dan K. Webb*_____
Dan K. Webb