```
             IN THE UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF ILLINOIS
                       EASTERN DIVISION


UNITED STATES OF AMERICA,      )
                               )
              Plaintiff,       )  Docket No. 13 CR 515
                               )
         vs.                   )
                               )
DMITRY FIRTASH and ANDRAS      )
KNOPP,                         )  Chicago, Illinois
                               )  July 2, 2018
              Defendants.      )  9:08 a.m.


            TRANSCRIPT OF PROCEEDINGS - Status
          BEFORE THE HONORABLE REBECCA R. PALLMEYER


APPEARANCES:


For the Plaintiff:        HON. JOHN R. LAUSCH JR.
                          UNITED STATES ATTORNEY
                          BY:  MR. AMARJEET S. BHACHU
                          219 South Dearborn Street
                          Chicago, Illinois  60604

                          UNITED STATES DEPARTMENT OF JUSTICE
                          BY:  MR. CHRISTOPHER J. CESTARO
                          1400 New York Ave. NW
                          Washington, DC  20530


For the Defendant         WINSTON & STRAWN LLP
Dmitry Firtash:           BY:  MR. DAN K. WEBB
                               MR. MATTHEW R. CARTER
                          35 West Wacker Drive
                          Chicago, Illinois  60601

For the Defendant         LAW OFFICES OF CAROLYN GURLAND
Andras Knopp:             BY:  MS. CAROLYN PELLING GURLAND
                          414 North Clay Street
                          Hinsdale, Illinois  60521
```

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Court Reporter:        FRANCES WARD, CSR, RPR, RMR, FCRR
                       Official Court Reporter
                       219 S. Dearborn Street, Suite 2144D
                       Chicago, Illinois  60604
                       (312) 435-5561
                       frances_ward@ilnd.uscourts.gov

| | |
|---|---|
| 1 | THE CLERK:  13 CR 515, United States versus Dmitry |
| 2 | Firtash and Andras Knopp for status. |
| 3 | MR. BHACHU:  Good morning, your Honor. |
| 4 | Amar Bhachu and Chris Cestaro -- his last name is |
| 5 | spelled C-e-s-t-a-r-o -- on behalf of the United States. |
| 6 | THE COURT:  Good morning. |
| 7 | MR. WEBB:  Your Honor, Dan Webb and Matt Carter on |
| 8 | behalf of the Defendant Dmitry Firtash. |
| 9 | THE COURT:  Good morning. |
| 10 | MS. GURLAND:  Good morning, your Honor. |
| 11 | Carolyn Gurland on behalf of Andras Knopp. |
| 12 | THE COURT:  Okay.  And what's our status? |
| 13 | I know that I got letters from counsel earlier in |
| 14 | the summer. |
| 15 | What's our current status? |
| 16 | MR. WEBB:  I am going to give you a quick status. |
| 17 | THE COURT:  Okay. |
| 18 | MR. WEBB:  This stuff is complicated in Austria, |
| 19 | but I'm going to give you a quick status. |
| 20 | And thank you for hearing us today, because this |
| 21 | status is a little more imminent than earlier ones, which I |
| 22 | updated you in letters. |
| 23 | THE COURT:  Right. |
| 24 | MR. WEBB:  And I do appreciate you considering it. |
| 25 | THE COURT:  Right. |

1     MR. WEBB:  So, as your Honor knows, we got this
2  motion pending that was fully briefed at the end of August.
3  You gave us two days of argument, which we have had, and I
4  have continued to give you updates.
5     The status is the following:  That there is this
6  court in the EU called the Court of Justice of the European
7  Union.  It has before it a case that is called XC and Others.
8  That is a case that actually is considering at least what I'm
9  told is a very critical issue that affects my client's case
10 before the Austrian Supreme Court.
11    That is a case that is deciding the applicability
12 of the EU Charter on Human Rights to extraordinary appeal
13 proceedings before the Austrian Supreme Court, which my
14 client currently has a case before the Austrian Supreme
15 Court, which I'm going to use the word "stayed," and it's not
16 active right now.  They are waiting for this decision to come
17 down.
18    That decision is going to come down, and we know
19 it's going to come down because of the following.
20    THE COURT:  Before you tell me that, let me just
21 ask one question and make sure I understand this.
22    This case, XC and Others, that's in the EU Court of
23 Justice -- Court of Justice of the European Union is
24 addressing -- is considering a procedure that's in the
25 Austrian Supreme Court.  It's directed at the same court that

1     involves your client.
2               MR. WEBB:  That's correct.
3               THE COURT:  All right.  Go ahead.
4               MR. WEBB:  Thank you.  Yes, your Honor.
5               So we know what's likely to happen because on June
6     5th, a couple weeks ago -- June 5th, an opinion came down
7     from that court.  It's called an advisory opinion, and it's
8     issued by someone called the Advocate General, who is some
9     type of official with that court.
10              And that opinion states, in essence, that there is
11    no obligation for the Austrian Supreme Court to apply the ECU
12    Charter on Human Rights in a case like Dmitry has -- Dmitry
13    Firtash has before the Austrian Supreme Court.  That's a
14    significant decision.
15              Now, that is an advisory opinion.  However, I am
16    told by the Austrian lawyers that this European court will
17    almost always follow that advisory opinion.  And so it's
18    highly likely that the Court of Justice of the European Union
19    is going to follow the advisory opinion and enter the opinion
20    I just described to you.
21              When that happens, I'm told that Mr. Firtash's
22    Austrian Supreme Court case will become reactivated
23    immediately before the Austrian Supreme Court and that he
24    will face extradition shortly.  I'm told maybe the end of
25    August or in September.

1          Now, nobody knows these things for sure, but the
2  reason they asked me to come before you as opposed to just
3  doing a letter update is because this is, at least they
4  believe, much more imminent that he will face extradition.
5  And as your Honor knows when we argued this, we are obviously
6  hoping that if we got a decision on these critical venue and
7  jurisdiction issues, it would have a profound impact on
8  whether this man gets put on a plane back to the U.S. and is
9  maybe incarcerated.
10         So that's why they asked me to come here, and
11 that's the update.  We are just updating you, and asking you
12 whether it's possible to expedite or where things stand.
13 That's why we came.  And we appreciate the chance to give you
14 the update.
15         THE COURT:  Anything -- Ms. Gurland, do you want to
16 add anything on behalf of Mr. Knopp?
17         MS. GURLAND:  Nothing specific, your Honor.
18         I wrote a letter and sent it to the Court along
19 with the letter from Mr. Firtash.  And all of the facts in
20 that letter remain the same, although he will be 80 on
21 September 1st, and he remains not in the best of health.  And
22 he remains in a situation where he is in Moscow not having
23 access to his doctors, who are in Budapest, and not having as
24 regular contact as he would like to have with his family, who
25 are either in Budapest or in London.  That was the situation

1  as I explained it in the letter, and that remains the
2  situation today, other than, of course, he is older.
3           THE COURT:  Got it.
4           For the government?
5           MR. BHACHU:  Judge, what I just observed is that
6  the initial motions to dismiss in this case were filed, I
7  believe, last May.  And since that time, we have been told
8  several times by, I think, Austrian counsel for Mr. Firtash
9  that things were about to happen.  And I think I told you
10 when we appeared on the motion to dismiss it's pretty
11 difficult to figure out exactly what's going on in Europe.
12          After that point in time, we had several updates
13 where Austrian counsel, I think, for Mr. Firtash suggested
14 something was about to happen and then something wasn't about
15 to happen and then something was about to happen.
16          I would just say to your Honor that, in my view,
17 it's been very difficult to figure out exactly what the
18 course of proceedings in Austria is.
19          It is correct that there was an advisory opinion
20 that was issued several weeks ago, but the timeline within
21 which the European court will then rule, after having
22 received that recommendation -- so what it is, is it's a
23 recommendation basically about how they should rule.
24 Probably much the same way as a magistrate might submit a
25 recommendation to your Honor.

1       THE COURT: Right.

2       MR. BHACHU: The timeline under which the European
3  court will rule is indeterminate.

4       I think I could project two things happening for
5  sure.

6       One is that Mr. Firtash's Austrian counsel, if he
7  is unsuccessful in his appeal to the Austrian Supreme Court,
8  will attempt to take a further appeal to the European Court
9  of Human Rights. That's the kind of standard playbook for
10 people trying to avoid extradition to the United States.

11      And so that process -- whether or not that process
12 would result in a further delay in his extradition is unknown
13 at this point in time. And that's something that would
14 really depend upon the decision of the Austrian government.
15 They might decide to let him stay in Austria pending a
16 decision from the European Court of Human Rights, which could
17 take another two to three years, or they could ship him back
18 pending that decision. It's just not known at this juncture.

19      The other thing I just want to stress with regard
20 to these motions, which we made at this point before, I also
21 suspect that Austrian counsel would likely, if there was any
22 sort of ruling from this court, use it as an opportunity to
23 try, as they are doing with the other proceedings in Europe,
24 to restart the extradition process in Austria anew. So that
25 if your Honor issued some sort of adverse ruling to the

1    government here and we were able to cure it promptly through
2    a superseding indictment or something like that -- I don't
3    think we need to do that, obviously, for the reasons we
4    already talked about.  But what I imagine would happen is,
5    there would be an effort to restart the extradition process
6    in Austria, thus delaying potential extradition for another
7    four years.
8         So my point is, I think that it's really
9    indeterminate to know what's going on in Austria right now.
10   There are proceedings that are still pending, but I don't
11   think it's fair to say that we know exactly when those
12   proceedings are going to conclude.
13         MR. WEBB:  I would agree that there is uncertainty.
14   I agree with that.  Although there is no question this
15   development in June is a big deal over there.  And if that
16   Austrian Supreme Court in two weeks orders him extradited, at
17   least I'm told that that court is not likely to stay things
18   any further because of an appeal to this human rights court.
19   I can't tell you that for certain, but I do know there is
20   clearly a sense of immediacy and concern.
21         And I appreciate you hearing us.
22         THE COURT:  Okay.  So I interpret what I am hearing
23   as, although there may or may not have been a reason for
24   urgency before this, there certainly is, at least from
25   defendant's perspective, now.

I don't believe that it makes any sense for me to delay a whole lot longer in ruling. I recognize there may or may not be any genuine urgency for the reasons that Mr. Bhachu mentioned. But it's been briefed. I'm in a position to rule on it now, so that's what I will do.

Recognizing that you have got two weeks or four weeks, or whatever it might be, why don't you let me know if anything else does happen. You can do that even by a letter, as you have done.

And I'm assuming that there is no big change in the law between now and when it was last briefed. If there is something new that's come down that you want me to know about, I want to give you about seven days to do that. So if there is something new that you want to add to your briefs, please do so immediately.

MR. WEBB: I believe the answer is no, there is nothing new that we have to add.

THE COURT: That's my expectation as well. I have been kind of following the law, and I don't see anything particularly new.

MR. WEBB: We don't either.

THE COURT: If there is something I don't know about, you can let me know.

MS. GURLAND: We will look, your Honor.

As we had mentioned at the oral argument, that *RJR*

1  *Nabisco* case was relatively new at the time.  And one of the
2  points that we had argued was that there was relatively
3  little guidance to federal courts about how they should
4  interpret this, and it's relatively complicated because it
5  applies differently to RICO than to money laundering than to
6  Travel Act.  So there is some chance that some federal courts
7  have come down with some guidance.  And if that is true, we
8  will get you something in seven days, as you have asked.
9              THE COURT:  Okay.  That's great.
10             MR. BHACHU:  Very good, Judge.
11             THE COURT:  All right.  Thank you.
12             MR. WEBB:  Thank you, your Honor.
13                    *   *   *   *   *

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/s/ Frances Ward_____July 30, 2018.
Official Court Reporter
F