UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No.   13 CR 515 |
| | ) | Hon.   Rebecca R. Pallmeyer |
| DMITRY FIRTASH, | ) | |
| also known as, "Dmytro Firtash," | ) | |
| and "DF," and | ) | |
| ANDRAS KNOPP | ) | |

**GOVERNMENT'S SECOND SUPPLEMENTAL RESPONSE
TO DEFENDANT FIRTASH'S AND KNOPP'S
MOTIONS TO DISMISS INDICTMENT**

The UNITED STATES OF AMERICA, by JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, and SANDRA MOSER, Acting Chief, Fraud Section, United States Department of Justice, hereby responds to defendants Dmitry Firtash's and Andras Knopp's motion for leave to file supplemental authority in support of their motions to dismiss the indictment and accompanying memorandum (the "Defendants' Memorandum").  In support of this response, the government respectfully represents as follows:

## BACKGROUND

Defendant Firtash, from abroad, orchestrated a corrupt scheme with his partners, including defendant Knopp and a United States-based co-conspirator, to bribe Indian officials in order to receive the necessary approvals for a mining project in India with the intention of selling millions of pounds of titanium corruptly procured through that mining project to a company headquartered in Chicago, Illinois.  Dkt. 2.  For this conduct, a grand

jury sitting in the Northern District of Illinois returned a five-count indictment charging defendants Firtash and Knopp and four others. Defendant Firtash is identified in the indictment as "the leader of the enterprise" who "oversaw, directed and guided certain of the enterprise's illegal activities," and the indictment alleges defendant Knopp occupied a "supervisory role in the enterprise." *Id.* at 6-8. Count Five of the indictment charges defendants Firtash and Knopp under Title 18, United States Code, Section 371 with conspiring to violate Sections 78dd-2 and 78dd-3 of the Foreign Corrupt Practices Act (the "FCPA"), 15 U.S.C. § 78dd-1, *et seq. Id.* at 24-27.

The government's proof at trial is expected to show that defendants Firtash and Knopp and their co-conspirators orchestrated a bribery scheme in which a United States-based domestic concern, namely defendant Gajendra Lal, while located in the U.S., conspired to bribe foreign officials, monitored the amount of bribe payments made, sought defendants Firtash's and Knopp's authorization to pay bribes, caused the preparation of documentation to make it falsely appear that money transferred in aid of the bribery conspiracy was transferred for legitimate commercial purposes, caused transfers through U.S. correspondent banks in furtherance of the bribery scheme, and sent and received emails and phone calls to and from the United States in furtherance of the corrupt scheme. *See* Dkt. 2 at 8, 11-19. The government's proof at trial is also expected to show that defendant Knopp is one of the conspirators who took an act in furtherance of the conspiracy to violate the FCPA while he was physically located within the United States. *See* Dkt. 40 at 79. The government does not plan to present evidence that defendant Firtash took any acts while located within the United States, or that either defendant Firtash or defendant Knopp fell into any of the categories of individuals

listed in Section 78dd-2 of the FCPA (*i.e.*, an officer, director, employee, agent, or stockholder of a domestic concern).

On or about May 9, 2017, while actively contesting extradition from Austria, defendant Firtash asked this Court to consider his motion to dismiss the indictment in spite of the fact that Firtash has never had his initial appearance in this district and remains a fugitive from justice.  Dkt. 24, 25.

On or about May 15, 2017, defendant Knopp, himself also a fugitive, likewise asked this Court to consider his motion to dismiss the indictment.  Dkt. 30, 31.

On or about July 24, 2017, the government filed its consolidated response to defendants Firtash's and Knopp's motions to dismiss the indictment (the "Government's Response Motion"), Dkt. 40, and on or about August 30, 2017, defendants Firtash and Knopp filed a joint reply.  Dkt. 47.  On or about September 20, 2017, defendants Firtash and Knopp submitted a supplemental brief in support of their motion to dismiss the indictment, Dkt. 54, and, on or about October 3, 2017, the government submitted a supplemental brief in response.  Dkt. 55.

On or about August 27, 2018, defendants Firtash and Knopp filed the Defendants' Memorandum arguing that the Second Circuit's recent opinion in *United States v. Hoskins*, No. 16-1010-cr, 2018 WL 4038192 (2d Cir. Aug. 24, 2018), supports their argument that Count Five of the indictment should be dismissed.  Dkt. 64 at 2.

### *United States v. Hoskins*

The general rule is that a person may be liable for conspiracy even though he is incapable of committing the substantive offense himself, as long as he conspires with someone who is capable of committing the offense.  *See Salinas v. United States*, 522 U.S.

52 (1997); *Ocasio v. United States*, 136 S. Ct. 1423 (2016); *United States v. Jones*, 938 F. 2d 737, 742 (7th Cir. 1991) ("A person, even though incapable of committing the underlying substantive offense, can be convicted of conspiracy under 18 U.S.C. § 371." (quoting *United States v. Donahue*, 885 F.2d 45, 48 (3d. Cir. 1989))).

In *Hoskins*, the Second Circuit took an expansive reading of the exception to this general rule, established in *Gebardi v. United States*, 287 U.S. 112 (1932), and held that non-resident foreign nationals who do not fall into any of the categories of individuals enumerated in Section 78dd-2 of the FCPA and who do not commit any acts while physically present in the United States cannot be prosecuted for conspiring to violate Sections 78dd-2 or 78dd-3 of the FCPA or for aiding-and-abetting those offenses even where those foreign nationals orchestrated the scheme from abroad and caused significant U.S. conduct to occur in furtherance of the scheme. *Hoskins*, 2018 WL 4038192 at *24.

## ARGUMENT

This Court should decline to follow the non-binding decision in *Hoskins* and should deny the defendants' motions to dismiss Count Five of the indictment for the reasons set out in the Government's Response Motion, and more briefly addressed below, including that: (i) Seventh Circuit case law distinguishes much of the rationale underlying *Hoskins*; (ii) Congress did not signal an intent to prevent well-entrenched principles of conspirator and accomplice liability from applying to the defendants; and (iii) the presumption against extraterritoriality does not apply. *See* Dkt. 40 at 70–92. In addition, defendant Knopp's reliance on *Hoskins* is especially misplaced, because the government's proof at trial is expected to show that defendant Knopp is one of the conspirators who took an act in

4

furtherance of the conspiracy to violate the FCPA while he was located within the United States, which places defendant Knopp within the category of individuals expressly covered by Section 78dd-3 of the FCPA. *See id.* at 79.

Moreover, as set forth in the Government's Response Motion, the Court should adhere to the fugitive disentitlement doctrine and principles of international comity and decline to rule on the defendants' motions to dismiss the indictment, including their requests to dismiss Count Five, given that an Austrian appellate court has already ordered defendant Firtash's extradition to the United States. *See id.* at 16-21.

### i. Seventh Circuit case law distinguishes the reasoning in *Hoskins*

In the Government's Response Motion, we argued the well-established principle that conspiratorial and accessorial liability generally apply to all individuals, including those incapable of committing the substantive offense. Dkt. 40 at 13. We explained that defendants Firtash and Knopp are liable under this widely-applied rule of secondary liability because they affiliated themselves with and directed conduct that occurred in the United States, including conduct that was undertaken by a United States-based domestic concern, and they conspired with others capable of committing the substantive offense. *Id.* at 14-15.

In the Government's Response Motion, we noted that circumstances that might warrant the extraordinary inference established in *Gebardi*—that Congress, simply by omitting a category of individuals from principal liability, also intended to shield that individual from secondary liability—are not present in this case. *Id.* at 13-14. Our argument relied in part on *United States v. Pino-Perez*, 870 F.2d 1230, 1233-35 (7th Cir. 1989) (*en banc*), a case in which the *en banc* Seventh Circuit rejected efforts to truncate

5

the scope of secondary liability. In *Pino-Perez*, the Seventh Circuit noted that "[t]he question is not whether [aider and abettor liability] is applicable—it always is," *id.* at 1233, and the Seventh Circuit explained that the following three exceptions "exhaust the cases in which an inference can confidently be drawn that Congress in enacting a criminal statute meant to protect a class of accomplices from being charged as aiders and abettors," *id.* at 1234: (1) "[w]hen a crime is so defined that participation by another is necessary to its commission" but the necessary participant has been omitted from principal liability; (2) when the offense involves "the victim of the crime"; and (3) when the offense involves "members of a group that the criminal statute seeks to protect." *Id.* at 1231-34 (citing *United States v. Southard*, 700 F.2d 1, 19-20 (1st Cir. 1983)).

Defendants Firtash and Knopp do not fall into any of the categories outlined in the Seventh Circuit's "exhaustive" list. They are not necessary parties to an FCPA violation, rather they are one of several conspiring bribe payors, none of whose involvement is necessary to the crime. *Cf. United States v. Castle*, 925 F.2d 831, 833 (5th Cir. 1991) (applying *Gebardi* to exclude the foreign official bribe recipient—"the very individuals whose participation was required in every case" but "were excluded from prosecution for the substantive offense"—from conspiracy liability). Furthermore, they are not victims of the offense; they are instead the perpetrators. And finally, the FCPA does not seek to protect bribe-paying defendants like Firtash and Knopp. *See* Dkt. 40 at 86-88. Thus, the Court should refrain from drawing any inference that Congress, simply by omitting defendants Firtash and Knopp from principal liability, also intended to shield them from secondary liability.

6

The Seventh Circuit also held in *Pino-Perez* that any effort to determine an affirmative Congressional policy to circumscribe the traditionally broad reach of secondary liability must be found in the text of the statute itself—without resort to legislative history. *Pino-Perez*, 870 F.2d at 1233-34. Judge Posner, writing for the *en banc* court, explained that "Congress doesn't have to think about aider and abettor liability when it passes a new criminal statute" because it attaches automatically, and it "would introduce great uncertainty into federal criminal law if the liability of a conceded aider and abettor depended on the results of an inquiry into Congress's intent concerning such liability in creating the offense that the defendant aided and abetted." *Id.* at 1234. In reaching this conclusion, the Seventh Circuit specifically rejected the approach taken by the Second Circuit in *United States v. Amen*, 831 F.2d 373 (2d Cir. 1987), including the Second Circuit's resort to legislative history in order to determine whether a class of individuals was meant to be excluded from the scope of a statute. 870 F.2d at 1234 ("[T]hat is the inquiry required by *Amen*").[1] Thus, in this Circuit, when conducting an analysis pursuant to *Gebardi* of whether Congress intended to preclude application of conspiratorial and accessorial liability to a particular group of persons, the examination must begin and end with the language of the statute itself.

---

[1] Notably, the Supreme Court's recent decision in *Ocasio v. United States*, 136 S. Ct. 1423 (2016), also made no reference to legislative history in order to decide whether conspiratorial liability under the Hobbs Act covered individuals incapable of committing the substantive offense—even though the text or "structure" of the Hobbs Act itself did not explicitly answer this question. The Second Circuit's method of analysis also runs afoul of the Supreme Court's recent reminder that "legislative history is not the law" and that it should not be used in an attempt to "divine messages from congressional commentary directed to different questions altogether . . . ." *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1631 (2018) (citing *Schwegmann Brothers v. Calvert Distillers Corp.*, 341 U.S. 384, 396 (1951) (Jackson, J., concurring)).

The Second Circuit's decision in *Hoskins* is, therefore, inconsistent with binding Seventh Circuit precedent. The Second Circuit explicitly applied the "teachings of . . . *Amen*" to the FCPA, *Hoskins*, 2018 WL 4038192, at *11, and its decision was heavily premised on a review of the legislative history of the FCPA—indeed, the vast majority of the opinion is devoted to an exegesis of legislative history. *Id.* at *13-22. This is, of course, unsurprising given that the Second Circuit is compelled to follow its own precedent, barring intervening *en banc* or Supreme Court authority. But it does not provide a basis for this Court to deviate from *Pino-Perez*. Because *Hoskins* rests on a legal premise and method of analysis already rejected by the Seventh Circuit, it does not afford the defendants with a basis for relief.

### ii. Congress did not signal an intent to prevent well-entrenched principles of conspirator and accomplice liability from applying to the defendants

The FCPA's text, structure, and legislative history support holding defendants like Firtash and Knopp, foreign nationals who actively participated in a U.S.-linked scheme to pay bribes, accountable under theories of secondary liability. This is particularly the case when viewed through the prism that any doubt about Congress's intent should be resolved in favor of secondary liability applying. *See Pino-Perez*, 870 F.2d at 1234 (declining to follow *Amen* and noting that, prior to the decision in *Amen*, "[d]oubt about Congress's intentions was resolved in favor of aider and abettor liability").

### a. The FCPA's text and structure do not indicate an intent to exclude defendants Firtash and Knopp

In *Hoskins*, the Second Circuit's analysis of the text and structure of the FCPA was primarily constrained to the observation that the FCPA does not contain a substantive provision that explicitly exposes nonresident foreign nationals, acting

outside the U.S., who lack an agency relationship with a U.S. person, and who are not officers, directors, employees, or stockholders of American companies, to principal liability. *Hoskins*, 2018 WL 4038192, at *12.

While it is true that such individuals are not exposed to principal liability under the FCPA, such a finding alone is an insufficient basis to exempt those individuals from secondary liability in this case. As discussed above, the circumstances that might warrant the extraordinary inference that Congress, by omitting a category of individuals from principal liability, also intended to shield those individuals from secondary liability are not present in this case. Furthermore, in *Ocasio*, the Supreme Court made clear that the fact that a statute is written so as to directly cover a limited category of persons does not alone support insulating others from secondary liability, and courts have found this to be true even where the categories are carefully delineated. *Ocasio*, 136 S. Ct. at 1432 (holding that the defendant could be convicted of a Hobbs Act conspiracy even when his co-conspirators were not expressly covered by the statute and explaining that "basic principles of conspiracy law resolve this case" and "the Government has no obligation to demonstrate that each conspirator . . . was even capable of committing [] the substantive offense"); *see also United States v. Ruffin*, 613 F.2d 408,413 (2d Cir. 1979) (finding defendant liable under causing theory even though "he obviously could not have been found guilty of violating 42 U.S.C. § 2703, since he was never an 'officer, director, agent or employee of, or connected in any capacity with, any agency receiving financial assistance,' the only category of persons to whom the criminal sanction of § 2703 directly applies"). Similarly, as the Seventh Circuit explained in *Pino-Perez*, the substantive provisions of many federal criminal statutes do not explicitly extend to a certain class of

individuals, and yet these individuals are properly understood to be exposed to conspiratorial liability. *Pino-Perez*, 870 F.2d at 1234. Thus, in order to insulate defendants Firtash and Knopp from secondary liability, something more must be found—*i.e.*, an affirmative intent to exclude the defendants from liability must be found—and it must be found beyond doubt, because any doubt about Congress's intent must be resolved in favor of secondary liability applying. *Id*.

There is nothing in the statutory text or structure of the FCPA that suggests that Congress wished to exempt foreign nationals who mastermind or supervise from abroad a bribery scheme involving a domestic concern, nor does anything in the statutory text or structure of the FCPA suggest that Congress even had the type of participant present here in mind at all. Accordingly, the fact that foreign nationals who mastermind or supervise from abroad a bribery scheme involving a domestic concern are not listed among those that can be held primarily liable under the statute should not be considered evidence of an affirmative legislative policy.

Rather, the text and structure of the FCPA more plausibly demonstrate an intent to broadly criminalize schemes to bribe foreign officials in return for favorable treatment for obtaining business, as long as there are threshold ties to the United States. As currently enacted, the FCPA tethers the bribe-paying conduct to the U.S. in a variety of ways. *See* 15 U.S.C. §§ 78dd-1 (links to an issuer of U.S. securities, even if a foreign entity or the agent thereof is a foreign national), 78dd-2 (links to a bribe-paying U.S. person or business, even if the agent thereof is a foreign national), 78dd-3 (acting in furtherance within the territory of the U.S.).

10

The FCPA's text and structure reveal that the FCPA was intended to apply expansively on the bribe-paying side of the offense, and it encompasses a wide array of individuals who act on behalf of U.S.-linked entities, without regard to their nationality. By enacting these provisions with specific linkages to the United States, Congress established primary sources of liability for bribe-paying under the FCPA. With the anchor to the United States firmly in place through principal liability, normal principles of conspirator and accomplice liability then come into play. Interpreting the statute to accommodate conspirator and accomplice liability in this manner fulfills the statutory purpose. *Cf. United States v. Hill*, 55 F.3d 1197, 1205 (6th Cir. 1995) (even though Congress "sought to exempt small business from the reach of [19 U.S.C.] § 1955 [] because they did not implicate national concerns," "Congress' intent is not thwarted by holding the operators of small business liable as aiders and abettors" of a large-scale gambling business because "[i]n this instance" "the small business becomes part of the national problem that Congress sought to eliminate").

While the statutory text of the FCPA, like most statutes, is silent as to the liability of accomplices and conspirators, in the face of such silence, courts routinely apply the default presumption that normal principles of conspirator liability and accomplice liability apply to individuals not expressly enumerated in the statute; moreover, any doubt about Congress's intentions are resolved in favor of secondary liability applying. *Pino-Perez*, 870 F.2d at 1234. Thus, defendants Firtash and Knopp should not be insulated from secondary liability in this case.

11

b.   **The FCPA's legislative history does not indicate an intent to exclude defendants Firtash and Knopp**

Even if resort to the legislative history were permitted in the Seventh Circuit to resolve the extent to which conspiratorial liability applies, there is no affirmative intention in the FCPA's legislative history to curtail conspiratorial liability for defendants like Firtash and Knopp.

In *Hoskins*, when analyzing the legislative history, the Second Circuit particularly relied on an April 6, 1977 Senate markup session amending an early version of the Senate bill (that in compromise with the House would eventually become the FCPA), in finding an affirmative legislative policy to exclude conspirator and accomplice liability for those not directly covered under the FCPA. *Hoskins*, 2018 WL 4038192, at *15. The version of the bill at that stage applied expressly only to companies and not individuals. *Id.* During the markup session, the drafters adopted two amendments to cover individuals directly. *Id.* In the Second Circuit's view, this change was significant and signaled a Congressional intent to adopt an approach "that was *not* reliant on conspiracy or complicity theories" and instead "defined, with great precision, who would be liable." *Id.*

The government respectfully submits that this interpretation of the legislative history is incorrect. The FCPA, at its inception, was a corporation-focused statute. S. 305, 95th Cong. (Jan. 1977) (applied expressly only to an "issuer" or a "domestic concern"); *Hoskins*, 2018 WL 4038192, at *14-15. During the markup session, the Senate decided to specify that employees of the company were covered under the statute just to be "crystal clear" that individuals were covered. Markup Session on S. 305, Senate Comm. on Banking, Housing and Urban Affairs, 95th Cong., at 8 (Apr. 6, 1977) ("Markup Session").

12

Otherwise, given that employees would be involved in every case, the statute's intent to cover individuals rather than the company alone might be open to question. *See United States v. Shear*, 962 F.2d 488, 493-494 (5th Cir. 1992) (where statute prohibited an "employer from violating safety regulations, an "employee" could not be convicted as an aider and abettor because every employer "necessarily has employees" for whom Congress must have contemplated principal liability) (emphasis in original). The amendment was also designed to make clear that "just [] an ordinary employee" was covered, not merely "an officer or director," as long as the employee was "acting on behalf of the company." Markup Session at 12-13. The need to make these distinctions among different types of individuals required more specific language regarding the liability of individuals. Thus, the Senate's decision during the markup session to specify categories of individual liability did not signal an affirmative legislative policy to jettison principles of conspirator and accomplice liability, particularly considering that both the Senate and the House specifically stated that normal principles "of aiding and abetting and joint participation" should apply to the FCPA. S. Rep. 94-1031, at 7 (1976); H.R. Rep. No. 95-640, at 8 (1977).

Although the Second Circuit also pointed to a number of places in the legislative history where Congress expressed concerns about applying United States law to foreigners and foreign activity, Congress consistently used narrow language when describing the situations when a foreign national would not be covered by the statute (*i.e.*, situations with no ties to the United States). *See, e.g.*, S. Rep. 94-1031, at 7 (1976) (the Senate understood that its proposal "would not permit prosecution of a foreign national who paid a bribe overseas acting *entirely on his own initiative*.") (emphasis

added); S. Rep. 95-114, at 11 (1977) ("the bill would not cover payments by foreign nationals *acting solely on behalf* of foreign subsidiaries *where there is no nexus* with U.S. interstate commerce or the use of U.S. mails and where the issuer, reporting company or domestic concern had *no knowledge* of the payment.") (emphasis added); H.R. Rep No. 95-640, at 8 (noting that a foreign national "who paid a bribe overseas acting *entirely on his own initiative*" would not be covered under the bill, but that traditional concepts of "aiding and abetting" liability and "joint participation" applied).

Indeed, whatever concerns Congress had about applying the FCPA to foreign nationals acting abroad are not implicated by applying the statute to conspirators and aiders and abettors of the principal violation. Such concerns would apply equally to (1) a foreigner operating abroad who is an "agent" of an issuer or domestic concern and (2) a non-agent foreign national who is a conspirator or accomplice of domestic actors. Congress overcame any concerns about applying United States law to foreign conduct sufficiently to include the first category as principals. There is no indication in the legislative history that it nonetheless excluded the latter category from secondary liability, particularly where such an interpretation would absolve high-level foreign nationals who direct United States-based actors in criminal conduct, while punishing foreign national underlings. To interpret the FCPA otherwise "would create a gaping loophole in the law that would hinder, rather than promote," the enforcement of the statute, punishing low-level foreign nationals facilitating the bribe scheme on behalf of a domestic concern, but not the foreign national ringleaders of the very same offense. *United States v. Henson*, 848 F.2d 1374, 1384 (6th Cir. 1988). Nothing in the statutory text, structure, or the legislative history supports treating high-level foreign nationals

14

disparately from lower-level counterparts. In fact, Judge Lynch, concurring in the *Hoskins* decision, recognized this very point; he noted it was a "perverse result" unlikely to have been anticipated or intended by Congress that "Hoskins himself may be convicted . . . for violating the FCPA, if the government establishes that he functioned as the agent of the American company, rather than as one who directed the actions of the American company in the interests of its French parent company," because this was "the equivalent of punishing the get-away driver who is paid a small sum to facilitate the bank robber's escape, but exempting the mastermind who plans the heist." *Hoskins*, 2018 WL 4038192, at *29.

Rejecting the application of conspirator and aiding-and-abetting liability in this case would create an unwarranted inequity in the law that would open the door to insulating from liability foreign leaders of organized crime groups who do not qualify for categories such as "employee" or "agent" of a domestic concern, while at the same time punishing their foreign underlings who do. Congress never expressed an intent to punish low-level foreign nationals while immunizing high-level foreign nationals, and this Court should reject the defendants' arguments to the contrary.

### *iii.* The presumption against extraterritoriality does not apply

The Defendants' Memorandum briefly suggests that application of the FCPA to defendants Firtash and Knopp would constitute an impermissible extraterritorial application of the FCPA. R. 64 at 2.[2] The presumption against extraterritoriality does

---

[2] To the extent this is the argument intended, it is waived owing to the failure to develop it. *United States v. Collins*, 361 F.3d 343, 349 (7th Cir. 2004) (applying general rule that legal issues not raised or adequately developed are waived).

15

not apply in this case.  In *RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090 (2016), the Supreme Court outlined "a two-step framework for analyzing extraterritoriality issues." *Id.* at 2101.  The Court stated:

> At the first step, we ask whether the presumption against extraterritoriality has been rebutted—that is, whether the statute gives a clear, affirmative indication that it applies extraterritorially.  We must ask this question regardless of whether the statute in question regulates conduct, affords relief, or merely confers jurisdiction. If the statute is not extraterritorial, then at the second step we determine whether the case involves a domestic application of the statute, and we do this by looking to the statute's "focus."  If the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application even if other conduct occurred abroad; but if the conduct relevant to the focus occurred in a foreign country, then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory.

*Ibid.*

The presumption against extraterritoriality does not apply to this case because defendants Firtash and Knopp and their coconspirators are charged with "domestic conduct."  Section 78dd-2 criminalizes a covered actor who "make[s] use of the mails or any means or instrumentality of interstate commerce corruptly in furtherance of" bribing a foreign official to obtain business.  15 U.S.C. § 78dd-2(a).  The evidence at trial is expected to show that defendants Firtash and Knopp and their coconspirators orchestrated a bribery scheme in which a United States-based domestic concern, namely defendant Gajendra Lal, while located in the United States, conspired to bribe foreign officials, monitored the amount of bribe payments made, sought defendants Firtash's and Knopp's authorization to pay bribes, caused the preparation of documentation to make it

16

falsely appear that money transferred in aid of the bribery conspiracy was transferred for legitimate commercial purposes, caused transfers through United States correspondent banks in furtherance of the bribery scheme, and sent and received emails and phone calls to and from the United States in furtherance of the corrupt scheme. *See* Dkt. 2 at 8, 11-19. That conduct, which satisfies all the offense elements, demonstrates that "conduct relevant to the statute's focus occurred in the United States" and proves a domestic violation of the statute.

In *Hoskins*, the Second Circuit did not consider whether the crime charged involved a domestic application of the statute, reasoning that *RJR Nabisco's* direction to determine whether a domestic application of the statute is involved is not applicable when a statute applies extraterritorially in the first instance, as does the FCPA. *Hoskins*, 2018 WL 4038192, at *23 n.10. The government respectfully disagrees with this conclusion. The Supreme Court in *RJR Nabisco* specified that a court need not adhere to the "sequence that we have set forth" in analyzing whether the application of a particular statute is impermissibly extraterritorial and acknowledged that courts can "start[] at step two in appropriate cases." *RJR Nabisco*, 136 S. Ct. at 2102 n.4. Indeed, "[a]n evaluation of the presumption's application to a particular case is essentially an inquiry into whether the domestic contacts are sufficient to avoid triggering the presumption at all." *Matter of Warrant to Search a Certain E-mail Account Controlled and Maintained by Microsoft Corp.*, 829 F.3d 197, 216 (2d Cir. 2016), *vacated and remanded on other grounds by* 138 S. Ct. 1186 (2018). Because a domestic application of the FCPA is at issue here, the presumption against extraterritoriality is inapplicable.

17

Moreover, Congress already concluded that foreign nationals acting abroad are covered by the FCPA—namely, officers, directors, employees, agents, and stockholders of U.S. and foreign-based issuers, and of domestic concerns. Thus, if the exact same conduct were undertaken by one of these enumerated individuals, even if they were foreign nationals who never stepped foot in the United States, it would be covered by the FCPA. Extending the reach of the statute to a foreign national ring-leader does not expand the geographic scope of the statute, but rather the categories of individuals to which it applies. Thus, it is a not a question of extraterritoriality, but rather a question of whether secondary liability applies. As described above, it does.

### iv. Defendant Knopp falls within the category of individuals expressly covered by Section 78dd-3 of the FCPA

Defendant Knopp's reliance on *Hoskins* is especially misplaced, given that the government's proof at trial is expected to show that defendant Knopp is one of the conspirators who took an act in furtherance of the conspiracy to violate the FCPA while he was located within the United States. *See* Dkt. 40 at 79. This category of individuals falls expressly within the group of persons covered by the FCPA and clearly can be prosecuted, including under the rationale of *Hoskins*, for the conspiracy to violate Section 78dd-3 of the FCPA that is charged in Count Five of the indictment. Thus, even if this Court were to reach the same holding as *Hoskins*, the conspiracy to violate Section 78dd-3 of the FCPA that is charged in Count Five of the indictment should not be dismissed as to defendant Knopp.

### *v.* The Court should apply the Fugitive Disentitlement Doctrine to bar defendants from litigating from abroad

As set forth in the Government's Response Motion, neither defendant in this case has presented himself to face the charges against him in the United States, and neither defendant finds himself in the "unusual" circumstances present in *In re Hijazi*, 589 F.3d 401 (7th Cir. 2009). *See* Dkt. 40 at 16-21. To the contrary, rather than refusing to extradite as Kuwait did in *Hijazi*, an appellate court in Austria has already ordered defendant Firtash to be extradited to the United States. There are significant policy considerations underlying courts' routine refusal to permit defendants to access the courts where they are only willing to submit their case for adjudication for the limited purpose of obtaining a favorable outcome. *See, e.g., United States v. Shalhoub*, 855 F.3d 1255, 1265 (11th Cir. 2017) ("Notwithstanding what the Seventh Circuit [in *Hijazi*] has stated on this issue, we submit that Shalhoub has an adequate remedy: appearance in the district court.") (internal quotes and cites omitted); *In re Kashamu*, 769 F.3d 490, 494 (7th Cir. 2014) (rejecting a motion to dismiss by a foreign national defendant who never stepped foot in the United States and who had been indicted 16 years earlier, noting that "[i]f [the defendant] wants to fight the charges, he has only to fly from Lagos to Chicago; there are loads of reasonably priced flights"); *United States v. Vaulin*, No. 16 CR 438, 2017 WL 3334861, at *5-6 (N.D. Ill. Aug. 4, 2017) (distinguishing *Hijazi* and denying motion to dismiss on fugitive disentitlement grounds, where a Polish defendant was fighting extradition, noting that the defendant "appears willing to [participate in the criminal case] only from a safe distance" and "should not reap the benefit of purposefully

evasive behavior, and issuing a ruling in these circumstances could encourage such behavior, rather than voluntary surrender").

Thus, the Court should adhere to the fugitive disentitlement doctrine and principles of international comity and decline to rule on the defendants' motions to dismiss the indictment, including their requests to dismiss Count Five, until after they submit themselves to the jurisdiction of this Court.

<u>CONCLUSION</u>

For the reasons provided above, the motions to dismiss Count Five should be denied.

WHEREFORE, the government respectfully requests that the Court enter an order (i) denying the defendants' motions to dismiss the indictment without prejudice to the defendants' right to present them once they submit to the jurisdiction of this Court; or (ii) in the alternative, denying the defendants' motions to dismiss.

Dated:      Chicago, Illinois
            September 22, 2018


Respectfully submitted.


JOHN R. LAUSCH, JR.                         SANDRA MOSER
United States Attorney                      Acting Chief, Fraud Section
Northern District of Illinois               Criminal Division, U.S. Dept. of Justice


/s/ Amarjeet S. Bhachu                      /s/ Christopher Cestaro
AMARJEET S. BHACHU                          CHRISTOPHER CESTARO
Assistant United States Attorney            Assistant Chief
219 South Dearborn Street                   United States Department of Justice
Fifth Floor                                 Criminal Division, Fraud Section
Chicago, Illinois 60604                     1400 New York Avenue, NW
(312) 469-6212                              Washington, DC 20530

MICHAEL T. DONOVAN
Special Assistant United States Attorney
219 South Dearborn Street
Fifth Floor
Chicago, Illinois 60604

## CERTIFICATE OF SERVICE

Amarjeet S. Bhachu, an Assistant United States Attorney assigned to the instant matter, hereby certifies that the attached GOVERNMENT'S SECOND SUPPLEMENTAL RESPONSE TO DEFENDANT FIRTASH'S AND KNOPP'S MOTIONS TO DISMISS INDICTMENT was served on September 22, 2018, in accordance with FED. R. CRIM. P. 49, FED. R. CIV. P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

/s/ Amarjeet S. Bhachu
AMARJEET S. BHACHU
Assistant United States Attorney
219 South Dearborn Street
Fifth Floor
Chicago, Illinois 60604