IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 13 CR 515 |
| | ) | |
| v. | ) | |
| | ) | JUDGE REBECCA R. PALLMEYER |
| DMITRY FIRTASH, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DMITRY FIRTASH AND ANDRAS KNOPP'S REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR LEAVE TO FILE SUPPLEMENTAL AUTHORITY

After Defendants Dmitry Firtash and Andras Knopp's Motions to Dismiss were fully briefed, the Second Circuit issued its affirming decision in *United States v. Hoskins*, 902 F.3d 69 (2d Cir. 2018). *Hoskins* is directly on point because it limits the reach of the Foreign Corrupt Practices Act ("FCPA") in a manner the government concedes would *not* cover Firtash or Knopp as pled in Count V of the Indictment. (ECF No. 70, Gov. Resp. at 6 (admitting Congress "omitt[ed] defendants Firtash and Knopp from principal liability" under the FCPA).) Unable to distinguish *Hoskins*, which is directly on point, the government argues this Court should ignore the Second Circuit's treatment of the same FCPA conspiracy issue involved here. The government is forced to largely rely on a strained reading of *Hoskins* itself and analogies to inapplicable cases. The Court should reject the government's arguments, follow the Second Circuit's reasoned *Hoskins* opinion, and dismiss Count V.

*Hoskins* considered a challenge to the FCPA and whether the government may employ theories of conspiracy or complicity to charge a defendant with violating the FCPA even if the defendant is not in the category of persons directly covered by the statute. The plain language of the FCPA establishes three categories of persons it covers: (1) issuers of securities registered

under the Securities Exchange Act, or any officer, director, employee, or agent of such issuer, or any stockholder acting on behalf of the issuer, using interstate commerce in connection with the payment of bribes; (2) American companies and American persons (i.e., a U.S. "domestic concern") using interstate commerce in connection with the payment of bribes; and (3) foreign persons or businesses taking acts to further certain corrupt schemes, including ones causing the payment of bribes, while present in the United States. *Hoskins*, 902 F.3d at 71 (citing 15 U.S.C. § 78dd-1 *et seq.*). After an extensive review of the FCPA and prior case precedent, the Second Circuit held that "the FCPA defined precisely the categories of persons who may be charged for violating its provisions" and "stated clearly the extent of its extraterritorial application" such that any attempt to go outside those "carefully-drawn limitations" by resorting to use of the complicity or conspiracy statutes is improper. *Id.* at 71–72.

The government's Indictment directly conflicts with *Hoskins* because it charges Firtash and Knopp with conspiring to violate the FCPA when neither fit into the statute's categories of defendants. With respect to Firtash, the government does not and cannot argue otherwise. (*See* Gov. Resp. at 2–3 (conceding that it "does not plan to present evidence that defendant Firtash took any acts while located within the United States, or that either defendant Firtash or defendant Knopp fell into any of the categories of individuals listed in Section 78dd-2 of the FCPA (*i.e.,* an officer, director, employee, agent, or stockholder of a domestic concern).").) And while the government claims it has "proof at trial" to establish that the plain language of the FCPA covers Knopp (*id.* at 18), dismissal is still appropriate because the government has not pled as much in the Indictment. *See United States v. White*, 610 F.3d 956, 958 (7th Cir. 2010) ("An indictment is reviewed on its face."); *United States v. Gotti*, 457 F. Supp. 2d. 411, 429–30 (S.D.N.Y. 2006) (refusing to read the government's additional allegations of money laundering into the

indictment when deciding a pretrial motion to dismiss; "The Government may not broaden Count Seven to include conduct not charged by the grand jury").

In light of *Hoskins*, and for the rest of the reasons set forth in Firtash and Knopp's motions (ECF Nos. 25, 31, 47), this Court should dismiss Count V.

### *United States v. Hoskins*

The *Hoskins* defendant was a nonresident foreign national alleged to have participated in a scheme to bribe officials in Indonesia in order to secure a $118 million contract from the Indonesian government. *Hoskins*, 902 F.3d at 72. Hoskins worked for Alstom S.A., a global company headquartered in France that provides power and transportation services. *Id.* The alleged bribery scheme centered on Alstom's American subsidiary, Alstom Power, Inc. ("Alstom U.S."). *Id.* The government alleged that Alstom U.S. and various individuals associated with Alstom S.A. retained two consultants to bribe Indonesian officials to secure a power contract. *Id.* The government also alleged that parts of the scheme occurred in the U.S., including the use of a bank account in Maryland and meetings in the U.S. *Id.* Hoskins never worked for Alstom U.S. in a direct capacity, nor traveled to the U.S. while the alleged scheme was ongoing. *Id.*

The government charged Hoskins in Count One of the indictment with a two-object conspiracy to violate the FCPA—the first constituting a violation of the prohibition on domestic concerns or their agents from violating the FCPA, and the second constituting a violation of the prohibition on foreign nationals or businesses from engaging in any acts relating to a bribery scheme while present in the United States. *Id.* at 72–73. Hoskins moved to dismiss Count One. *U.S. v. Hoskins*, 123 F. Supp. 3d 316, 317 (D. Conn. 2015). He argued that the FCPA prescribes liability only for narrowly circumscribed groups—American companies and citizens; their agents, employees, officers, directors, and shareholders; and foreign persons acting on American soil—and that the government could not circumvent those limitations by charging him with

3

conspiring to violate the FCPA if he did not otherwise fit into the statute's enumerated categories of defendants. *Id.* at 319–20. The district court concluded that "Congress did not intend to impose accomplice liability on non-resident foreign nationals who were not subject to direct liability" under one of the statute's provisions. *Id.* at 323–27. The court thus dismissed Count One.[1] *Id.*

On appeal, the Second Circuit considered the dismissal of Count One anew. *Hoskins*, 902 F.3d at 76. The court noted that it was generally appropriate to charge a person with conspiring to commit a crime although that person may not directly commit the crime. *Id.* at 77 (citing *Salinas v. United States*, 522 U.S. 52, 64 (1997)). The court also noted, though, that this principle is limited by the "affirmative legislative policy exception," which applies when it is clear that the legislature did not intend accomplice liability to extend to certain persons. *Id.* at 77–78.

The Second Circuit analyzed, in great detail, the affirmative legislative policy exception as applied in the two leading cases of *Gebardi v. United States*, 287 U.S. 112 (1932) and *United States v. Amen*, 831 F.2d 373 (2d Cir. 1987). In *Gebardi*, the Supreme Court overturned a woman's conviction for conspiracy to violate the Mann Act, which outlaws transportation of a woman across state lines for an immoral purpose. *Gebardi*, 287 U.S. at 118–123. The Court reasoned that in enacting the Mann Act, the legislature purposefully declined to criminalize the woman's acquiescence to her own illegal transport. *Id.* at 121. As a result, the Court found that holding the woman guilty of conspiracy would frustrate the intent of the legislature. *Id.* at 123.

*Amen* examined whether it was proper to convict a defendant of conspiracy to violate the continuing criminal enterprise statute, designed to reach the "kingpin" in an enterprise, when the

---

[1] The district court dismissed the first object of the conspiracy count except to the extent the government could prove Hoskins was an agent of a U.S. domestic concern, and the second object in its entirety. *Id.*

4

defendant himself was not the kingpin. *Amen*, 831 F.2d at 381–82. Applying *Gebardi*, the Second Circuit reasoned that the charging statute similarly evinced an affirmative legislative policy to limit conspiracy or accomplice liability to the "kingpin" individuals who Congress intended as targets of the statute, and not third parties such as the defendant. *Id.*[2]

The *Hoskins* court "[a]ccept[ed] *Gebardi*'s teaching that conspiracy and complicity liability will not lie when Congress demonstrates an affirmative legislative policy to leave some type of participant in a criminal transaction unpunished." *Hoskins*, 902 F.3d at 80. The Second Circuit explicitly rejected the government's narrow reading of *Gebardi* as foreclosing liability for conspiracy or complicity only when (1) the defendant's consent or acquiescence is inherent in the substantive offense, or (2) the defendant's participation in the crime is frequently, if not normally a feature of the substantive criminal conduct. *Id.* at 81.

Next, the Second Circuit looked to the FCPA's text and structure to see if an affirmative legislative policy exists to leave unpunished certain persons. *Id.* at 84. First, the court found the plain language of the FCPA contains no provision assigning liability to persons who, like the *Hoskins* defendant (and Firtash and Knopp), are nonresident foreign nationals, acting outside American territory, who lack an agency relationship with a U.S. person, and who are not officers, directors, employees, or stockholders of American companies. *Id.* ("[T]here is no text that creates any liability whatsoever for the class of persons in question."). Second, it held the structure of the FCPA confirms that Congress purposefully excluded this class of persons because the statute includes specific provisions covering every other possible combination of

---

[2] The government relies heavily on the Seventh Circuit's disagreement with *Amen* in *United States v. Pino-Perez*, 870 F.2d 1230 (7th Cir. 1989). But the *Pino-Perez* court acknowledged (as it must) the principle established by the Supreme Court in *Gebardi*—that "[t]here had to be 'an affirmative legislative policy' to create an exemption from the ordinary rules of accessorial liability." *Id.* at 1234 (citing *United States v. Falletta*, 523 F.2d 1198, 1200 (5th Cir. 1975) (quoting *Gebardi*, 287 U.S. at 123)). The same principle applies here, so *Pino-Perez* does little to support the government's position.

nationality, location, and agency relation.  *Id.* at 84–85 ("The single, obvious omission is jurisdiction over a foreign national who acts outside the United States, but not on behalf of an American person or company as an officer, director, employee, agent, or stockholder.").  Third, the court looked to the legislative history of the act to determine if there was a policy basis for Congress to exclude this category of defendants from criminal liability.  *Id.* at 85–95.  *Hoskins* found that the FCPA's legislative history shows an affirmative intent by Congress to leave foreign nationals like Hoskins (and Firtash and Knopp) outside the scope of the FCPA due to specific concern about the scope of extraterritorial application of the statute and a desire that the statute "not overreach in its prohibitions against foreign persons."  *Id*. at 94.  The court thus upheld, in relevant part, the district court's dismissal of Count One of the indictment.[3]  *Id.* at 98.

The Second Circuit also held that the presumption against extraterritoriality independently prevented the conspiracy charge.  *Id.* at 95–97.  Applying the principles set forth by the Supreme Court in *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090 (2016), *Hoskins* held that U.S. law does not apply extraterritorially without Congressional authorization and here, the FCPA's legislative history indicated that Congress explicitly limited the extraterritorial application of the FCPA.  *Id.*  This separate, independent basis for dismissal applies here too.[4]

---

[3] While the Second Circuit affirmed the district court's conclusion regarding the general limitations on charging conspiracy liability under the FCPA, it reversed in part and held that the defendant could be liable for conspiring with foreign nationals who committed acts in the U.S. if the government proved that the defendant was acting as an agent of the U.S. subsidiary.  *Id.* at 97–98.  That holding is inapplicable here where it is not alleged that Defendants are domestic concerns or agents of a domestic concern.

[4] Contrary to the government's claim, Defendants did not waive their right to contest the extraterritorial reach of the FCPA charge.  (*See* Gov. Resp. at 15 n.2.)  The basis of Defendants' argument with respect to Count V was and is that Firtash and Knopp do not fall within the reach of the FCPA and the government cannot circumvent that by charging conspiracy.  (*See, e.g.,* Firtash Mem. ISO Motion to Dismiss, ECF. No. 25 at 20 ("The FCPA statute is restricted by its terms to an individual defendant's actions in the United States and it is impermissible to extend FCPA jurisdiction over Firtash by appealing to the conspiracy statute.").)  That principle applies both with respect to whether the charge is deficient as a matter of law *and* whether it can apply extraterritorially.

**Application of *United States v. Hoskins***

The Second Circuit's holding in *Hoskins* is directly applicable to Count V. *Hoskins*' conclusion regarding the limited scope of the FCPA's coverage to nonresident foreign nationals is consistent with the reasoning of other courts that have addressed this question as well.

In *United States v. Castle*, 925 F.2d 831 (5th Cir. 1991), for example, the Fifth Circuit similarly concluded that foreign officials who accept bribes could not be prosecuted for conspiracy to violate the FCPA because they could not be prosecuted directly for the same conduct under the FCPA.[5] *See also United States v. Blondek*, 741 F. Supp. 116 (N.D. Tex. 1990) (declining to extend the reach of the FCPA to foreign officials through application of the conspiracy statute); *United States v. Bodmer*, 342 F. Supp. 2d 176, 181 n.6 (S.D.N.Y 2004) ("In *Gebardi*, the Supreme Court held that where Congress passes a substantive criminal statute that excludes a certain class of individuals from liability, the Government cannot evade Congressional intent by charging those individuals with conspiring to violate the same statute.").

Thus, courts considering the scope of the FCPA's reach have consistently held that the text and structure of the statute demonstrate a Congressional intent to exclude certain persons from liability. *See Hoskins*, 902 F.3d at 93–95; *Castle*, 925 F.2d at 835–36; *Bodmer,* 342 F. Supp. 2d at 182–89; *Blondek*, 741 F. Supp at 118–21. In fact, in *Bodmer*, the government *conceded* that if the FCPA's criminal penalties did not apply directly to the defendant, *Gebardi* precluded him from criminal sanction for conspiring to violate the same. 342 F. Supp. 2d at 190.

---

[5] The government's reliance on *Castle* to support its "necessary party" exception is misleading. (Gov. Resp. at 6.) While the court in *Castle* acknowledged that the participation of foreign officials was required in every case, it did not exclude foreign officials from conspiracy liability on that basis. *Castle*, 925 F.2d at 835–86. Instead, after an extensive review of the *Gebardi* principle and statutory text and legislative history of the FCPA, it excluded foreign officials from conspiracy liability because it found "an affirmative legislative policy" evidencing "Congressional intent not to prosecute foreign officials." *Id.*

Here, the government argues that the Second Circuit's holding in *Hoskins* is expansive and inconsistent with binding Seventh Circuit precedent. (Gov. Resp. at 4, 8.) But *Hoskins*' thorough analysis of the text, structure, and legislative history of the FCPA is directly applicable. The government advances many of the same arguments that were presented, and ultimately rejected, in *Hoskins*. And, while the government's position in *Hoskins* and here is consistent with a 2015–2016 Department of Justice Publication,[6] the Second Circuit has now expressly rejected it. This Court should too and none of the government's arguments have merit.

1. **The Government Improperly Limits *Gebardi***

*First*, the government attempts to limit *Gebardi* as establishing an "extraordinary inference" that Congress, by omitting a category of individuals from principal liability, also intended to shield those persons from conspiracy liability. (Gov. Resp. at 5.) Instead, the government claims that, aside from three narrow exceptions, Seventh Circuit law dictates that it is *always* possible to charge a defendant with conspiracy, even where it is impossible to charge the defendant with principal liability. (*Id*. at 5–6.) The three exceptions are: (1) when a crime is so defined that participation by another is necessary to its commission but the necessary participant has been omitted from principal liability; (2) when the offense involves the victim of the crime; and (3) when the offense involves members of a group that the criminal statute seeks to protect. (*Id*. (citing *United States v. Pino-Perez*, 870 F.2d 1230 (7th Cir. 1989)).)[7]

---

[6] *A Resource Guide to the* U.S. Foreign Corrupt Practices Act, by the Criminal Division of the U.S. Department of Justice and the Enforcement Division of the U.S. Securities and Exchange Commission at 34; *available at*: https://www.justice.gov/sites/default/files/criminal-fraud/legacy/2015/01/16/guide.pdf. Because this document is a matter of public record, this Court can take judicial notice of and consider it in deciding this motion to dismiss. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

[7] As set forth in Defendants' reply, the government misconstrues the full context of the *Pino-Perez* analysis by describing its exception as the "necessary party" exception and requiring the individual in question to be indispensable to the alleged crime. (ECF. No. 47 at 32–34 & n.24.) The exception in *Pino-Perez* is that if a statute specifies who can be guilty of a crime "necessarily involving" one or more others, the legislature did not intend to include those others in the crime. Applied to the FCPA, this

The government advanced the same limited exceptions to conspiracy liability before the district court in *Hoskins* (albeit condensed into two exceptions rather than three). *Hoskins,* 123 F. Supp. 3d at 322 ("[The government] maintains that [the *Gebardi*] exception only 'applies in two limited circumstances: (1) where a class of persons is a necessary party to the crime and was specifically excluded from prosecution for the substantive violation by Congress (*e.g.*, the foreign official who receives the bribe payment under the FCPA, or the woman who is transported across state lines under the Mann Act); or (2) where the substantive statute was enacted to protect the class of person to which the individual belongs (*e.g.*, victims).'") The district court found the government's interpretation of *Gebardi* too narrow as Congressional intent is evident in other circumstances as well. *Id.*

In the Second Circuit, the government changed course entirely, arguing that *Gebardi* applies only when (1) the defendant's consent or acquiescence is inherent in the substantive offense, or (2) the defendant's participation in the crime is frequently, if not normally, a feature of the substantive criminal conduct. *Hoskins*, 902 F.3d at 81. But the Second Circuit rejected that position as well because the government's arguments would "effectively circumscribe the ability of the courts to ascertain congressional intent in enacting criminal statutes." *Id.* The same is true here and the Seventh Circuit has recognized as much regarding statutory intent. *See, e.g., United States v. McDonald*, 453 F.3d 958, 960 (7th Cir. 2006) ("[T]he primary rule for statutory construction is to give effect to the intent of the legislature.")

---

principle means that when the legislature defined the three categories of persons who the government may prosecute under the FCPA, the legislature meant to exclude the parties it did not include, namely foreign officials (like the defendants in *Castle* and *Blondek*) and foreign nationals who do not act in furtherance of the corrupt payment in the United States (like the defendant in *Hoskins* and Defendants here).

9

## 2. The Government Misreads the Text and Structure of the FCPA

*Second*, the government argues that the FCPA's text and structure do not signal an intent to prevent conspirator liability from applying to foreign nationals, like Firtash and Knopp, who are not agents of domestic concerns and who did not commit any acts while physically present in the United States. (Gov. Resp. at 8–11.) The government relies on *Ocasio v. United States*, 136 S. Ct. 1423 (2016), to support its argument that "the fact that a statute is written so as to directly cover a limited category of persons does not alone support insulating others from secondary liability, . . . even where the categories are carefully delineated." (Gov. Resp. at 9.)

*Ocasio* examined whether it was possible to convict the defendant, a police officer, of conspiring to violate the Hobbs Act. *Ocasio*, 136 S. Ct. at 1427. In *Ocasio*, the defendant had accepted money from owners of an automobile shop to direct car accidents to their establishment. *Id.* He was convicted of conspiring with those shop-owners to violate the Hobbs Act, which criminalizes obtaining property from another with his consent and under color of official right—i.e., taking a bribe. *Id.* at 1428–29. The defendant in *Ocasio* argued that there was no basis to convict him because his alleged coconspirators (the shop-owners) were not capable of committing the substantive offense. *Id*. at 1429. The Supreme Court rejected this argument, relying on the uncontroversial principle that it is generally possible to convict a person of conspiring to commit a crime that he cannot personally commit. *Id*. at 1430–32. But the Supreme Court did not address the question at the heart of *Gebardi* (and here): whether Congress, in crafting the statute at issue, intended to exclude certain individuals from liability.

*Hoskins* also considered *Ocasio*, finding that "the unique features of Hobbs Act extortion limit *Ocasio's* helpfulness to the government":

> Because the Supreme Court did not agree that the Hobbs Act manifested . . . any intention to limit liability for the payer of a bribe, the Court rejected the argument that conspiracy liability

10

> should be circumscribed based on any such limitation. Consequently, the case does not demonstrate a narrowing of the affirmative-legislative-policy exception, but simply a situation where there was no affirmative legislative policy to leave the bribe payers unpunished. Moreover, *Ocasio*'s independent ruling that incapacity to commit a substantive offense does not, without more, preclude conspiracy or complicity charges, is merely a reaffirmation of the common-law principle addressed above, not an abdication of the affirmative-legislative-policy exception.

*Hoskins*, 902 F.3d at 82–83 (citation omitted). Similarly, here, the government's reliance on *Ocasio* does nothing to offset Defendants' argument (with which the Second Circuit agreed), that if the legislature has carefully limited the FCPA's application to certain classes of individuals, the prosecution cannot circumvent this result through use of the conspiracy statute.

The government also claims that "[t]here is nothing in the statutory text or structure of the FCPA that suggests that Congress wished to exempt foreign nationals who mastermind or supervise from abroad a bribery scheme involving a domestic concern" and that the "FCPA's text and structure reveal that the FCPA was intended to apply expansively on the bribe-paying side of the offense, and [] encompass[] a wide array of individuals who act on behalf of U.S.-linked entities, without regard to their nationality." (Gov. Resp. at 10–11.) Not so.

Congress carefully considered the extent to which the FCPA should apply to foreign nationals, and enacted clearly-defined limits accordingly. While it is possible to prosecute American companies, citizens, and residents for any conduct they engage in, world-wide, for making a corrupt payment to a foreign official, foreign nationals are *only* liable under the FCPA if they are an officer, director, employee, or agent of a U.S. company, or if they take action in the United States in furtherance of a scheme to make such a corrupt payment. Thus, the FCPA does not apply broadly to foreign nationals on the (alleged) bribe-paying side. Instead, the statute's express terms apply to foreign nationals acting overseas *only if* they are an officer, director, employee, or agent of a U.S. company. These limitations make sense in light of legislative

11

history revealing Congress' legitimate concerns about the scope of U.S. law related to foreign citizens acting abroad. *See Blondek,* 741 F. Supp. at 119 (noting that the drafters of the FCPA were "well aware of, and actively considered, the 'inherent jurisdictional, enforcement, and diplomatic difficulties' raised by the application of the bill to non-citizens of the United States").

3. **The Government's Arguments as to the Legislative History of the FCPA are Unavailing**

*Third*, the government takes issue with *Hoskins'* reliance on, and reading of, the legislative history of the FCPA. The government first attempts to distinguish *Hoskins* by arguing that it impermissibly "resort[s] to legislative history" instead of looking to the text and structure of the statute to determine an affirmative Congressional policy. (Gov. Resp. at 7–8.) This argument is wrong. *Hoskins* "ke[pt] with traditional principles of statutory interpretation" by starting with "the language [of the FCPA statute] itself." *Hoskins*, 902 F.3d at 81 & n.5; *see also id.* at 84 ("We begin with the text of the statute."); *Hoskins*, 123 F. Supp. 3d at 322–23 ("The clearest indication of legislative intent is the text and structure of the FCPA, which carefully delineates the classes of people subject to liability and excludes nonresident foreign nationals where they are not agents of a domestic concern or did not take actions in furtherance of a corrupt payment within the territory of the United States."). *Hoskins* also recognized, however, that in situations where, as here, the statute is susceptible to divergent understandings, the court may look to the statutory scheme *as a whole* to discern an affirmative legislative policy. *Id.* The Seventh Circuit consistently recognizes the same bedrock principles and this Court should follow them too. *See, e.g., United States v. Markgraf*, 736 F.2d 1179, 1182 (7th Cir. 1984) ("Our task, then, is the same as it is in any case involving statutory interpretation: to determine congressional intent. In determining this intent, courts customarily look to several factors: the language of the statute [and] the legislative history."); *United States v. Palumbo Bros., Inc.*, 145 F.3d 850, 865

(7th Cir. 1998) ("When the language of a statute is not clear, however, the Supreme Court concluded that courts should examine congressional intent and legislative history underlying the statute to determine whether there is a clearly expressed legislative intention to the contrary.").

The government then argues that, even if the legislative history is proper to consider, there is no affirmative intent in the FCPA's legislative history to limit conspiratorial liability for foreign national defendants like Firtash and Knopp. (Gov. Resp. at 12–15.) The government takes issue with the Second Circuit's reliance on an April 6, 1977 Senate markup session amending an early version of the Senate bill (that would eventually become the FCPA) by adopting two amendments to cover individuals directly when the prior version of the bill applied only to companies. (*Id.* at 12.) According to the government, the Second Circuit's interpretation of this legislative history as signaling Congress's intent to adopt an approach "that was not reliant on conspiracy or complicity theories" and instead "defined, with great precision, who would be liable" is incorrect. (*Id.* (citing *Hoskins*, 902 F.3d at 87–88).)

Defendants do not dispute that the principal focus of the FCPA when it was first enacted was on bribery by U.S. companies. *See Castle*, 925 F.2d at 834; *Bodmer*, 342 F. Supp. 2d at 186. As the Second Circuit explained, an earlier draft evidenced the Senate's intention to create individual liability using the conspiracy and complicity statutes rather than by enumerating particular individuals who could be liable within the statute's text. *Hoskins*, 902 F.3d at 87. But the markup session specifically addressed concerns regarding individual liability by significantly clarifying the classes of persons liable under the statute and "*reducing the bill's reliance on conspiracy and complicity theories.*" *Id.* (emphasis added). The Second Circuit is right. Regardless, the Second Circuit relied on far more of the statute's legislative history than a single mark-up session when it concluded that "[t]he strands of the legislative history demonstrate, *in*

13

*several ways*, the affirmative policy described above: a desire to leave foreign nationals outside the FCPA when they do not act as agents, employees, directors, officers, or shareholders of an American issuer or domestic concern, and when they operate outside United States territory." *Id.* at 93–94 (emphasis added).

The government further resorts to claims that the FCPA could not have intended to exclude from liability the "high-level foreign nationals who direct United States-based actors in criminal conduct, while punishing foreign national underlings." (Gov. Resp. at 14–15.) This ignores that the terms of the FCPA do *not* apply to someone in Firtash's position—i.e., a non-officer, director, employee, or agent of a U.S. company. If Congress wanted to extend liability to these persons, it would have included them in its text. *See Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1047 (7th Cir. 2013) ("The preeminent canon of statutory interpretation requires that courts presume that the legislature says in a statute what it means and means in a statute what it says there.") (citing *BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004)). Moreover, if Congress wanted or wants to add them, it can. *See Neal v. United States*, 516 U.S. 284, 295 (1996) ("Congress is free to change this Court's interpretation of its legislation.").

4. **The Presumption Against Extraterritoriality Applies to Count V**

*Fourth*, the government argues that the presumption against extraterritoriality does not apply to the FCPA charge. (Gov. Resp. at 15–18.) The *Hoskins* court directly addressed this issue and held that the territorial limitations of the FCPA preclude liability for a foreign national who is not an agent, employee, officer, director, or shareholder of an American issuer or domestic concern *unless* that person commits a crime within the territory of the United States. *Hoskins*, 902 F.3d at 95–97. The Second Circuit foreclosed the government from expanding the extraterritorial reach of the FCPA by recourse to the conspiracy and complicity statutes. *Id.* The government's "respectful[] disagree[ment]" with this holding is unavailing. (Gov. Resp. at 17.)

14

5. **Principles of International Comity and the Fugitive Disentitlement Doctrine Do Not Demand a Different Result**

*Fifth and finally*, the government resorts to argument on the fugitive disentitlement doctrine and principles of international comity. (Gov. Resp. at 19–20.) As discussed in Defendants' reply in support of their motion to dismiss, there is no risk of dual proceedings in Austria and the United States and principles of international comity do not counsel against this Court ruling on Defendants' motions. (ECF No. 47 at 1–5.) Nor is Defendants' motion to cite supplemental authority the appropriate place to rehash those arguments. Moreover, to the extent the government is now asking the Court to apply the fugitive disentitlement doctrine to bar Defendants from "litigating from abroad" (Gov. Resp. at 19), the government waived this argument by failing to raise it until the instant motion. *See United States v. Collins*, 361 F.3d 343, 349 (7th Cir. 2004).[8]

---

[8] While the government unfairly characterized Knopp as a "fugitive" in its opposition brief, which Defendants dispute (ECF No. 47 at 4–5), it did not invoke the fugitive disentitlement doctrine as a bar to this Court ruling on Defendants' motions to dismiss. Even if it had, the Seventh Circuit's decision in *In re Hijazi*, 589 F.3d 401, 414 (7th Cir. 2009)—in which the Seventh Circuit took the unusual step of issuing a writ of mandamus directing the district court to rule on the defendant's motion to dismiss the indictment despite the defendant remaining in a jurisdiction outside the United States—teaches that the doctrine has no application here where both Firtash and Knopp are similarly situated to the *Hijazi* defendant.

Dated:  October 9, 2018    Respectfully submitted,

*/s/ Dan K. Webb*

Dan K. Webb
Matthew R. Carter
Alison S. Cooney
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
(312) 558-5600
dwebb@winston.com
mcarter@winston.com
acooney@winston.com

*Attorneys for Dmitry Firtash*


*/s/ Carolyn Pelling Gurland*

Carolyn Pelling Gurland
WHITE & CASE LLP
227 West Monroe Street
Suite 3900
Chicago, IL 60606-5055
carolyn.gurland@whitecase.com

*Attorney for Andras Knopp*

## **CERTIFICATE OF SERVICE**

I, Dan K. Webb, hereby certify that on October 9, 2018, the foregoing was served upon the following via ECF:

Amarjeet Singh Bhachu
Michael Thomas Donovan
United States Attorney's Office
219 South Dearborn Street
Suite 500
Chicago, IL 60604
(312) 353-5300

Jonathan Robell
U.S. Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue NW
Washington, DC 20530
(202) 616-5136

                                                                      */s/ Dan K. Webb*
                                                                      Dan K. Webb